-                              PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2844
_____

BRIAN ELLIOTT,

Appellant

v.

ARCHDIOCESE OF NEW YORK;
CHURCH OF THE NATIVITY OF OUR BLESSED LADY;
MARIST BROTHERS OF THE SCHOOLS, INC., a New York
Corporation; MT. ST. MICHAEL'S SCHOOL; BROTHER
DAMIAN
GALLIGAN, Individually and in his official capacity
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civ. No. 1-09-00611)
Hon. Sue L. Robinson, District Judge
_____

Argued April 10, 2012
BEFORE:  HARDIMAN, GREENAWAY, JR., and
GREENBERG, Circuit Judges

(Filed: June 12, 2012)
_____

Thomas C. Crumplar
Robert Jacobs
Jacobs & Crumplar
2 East 7th Street
P.O. Box 1271
Wilmington, DE 19899

Stephen J. Neuberger (argued)
Thomas S. Neuberger
The Neuberger Firm
2 East 7th Street
Suite 302
Wilmington, DE 19801

     <u>Attorneys for Appellant</u>

Mary F. Dugan
Anthony G. Flynn (argued)
Jennifer M. Kinkus
Neilli M. Walsh
Young, Conaway, Stargatt & Taylor
1000 North King Street
Rodney Square
Wilmington, DE 19801

     <u>Attorneys for Appellees</u>
     <u>Archdiocese New York and</u>

2

Church of Nativity of Our
Blessed Lady

Penelope B. O'Connell (argued)
Mark L. Reardon
Elzufon, Austin, Reardon, Tarlov & Mondell
300 Delaware Avenue
Suite 1700, P.O. Box 1630
Wilmington, DE 19899

Attorneys for Appellees
Marist Brothers of the Schools, Inc.,
and Mt. St. Michael's School

_____

OPINION OF THE COURT
_____

GREENBERG, Circuit Judge.

## I. INTRODUCTION

This matter comes on before this Court on an appeal from the District Court's partial final judgment entered pursuant to Federal Rule of Civil Procedure 54(b) in favor of four of the five defendants in this action, the Institutional Defendants, following the Court's conclusion that it lacked personal jurisdiction over two of these defendants and that the applicable statutes of limitations barred the plaintiff's claim against all four Institutional Defendants. Plaintiff, now appellant, Brian Elliott brought this action against the Institutional Defendants, i.e., the

Archdiocese of New York ("the Archdiocese"), the Church of the Nativity of Our Blessed Lady ("the Church"), The Marist Brothers of the Schools, Inc. ("the Marist Brothers"), and Mt. St. Michael's School ("Mt. St. Michael's"), and an individual defendant, Brother Damian Galligan, seeking monetary damages for personal injuries that Elliott allegedly suffered as a result of Galligan's sexual abuse of him beginning in 1977, when he was eight years old, and continuing until 1983. For the reasons that follow, we will dismiss the appeal for lack of jurisdiction.

## II. FACTUAL HISTORY

The Archdiocese, a Roman Catholic entity and a governing organization of the Catholic Church, is incorporated in the State of New York with its principal place of business in New York City. The Church of the Nativity, a private religious organization and parish under the Archdiocese, also is incorporated in the State of New York with its principal place of business in New York City. The Marist Brothers is a religious order. It is incorporated in the State of New York and serves mass at the Church of the Nativity. Mt. St. Michael's is incorporated in the State of New York as a private religious high school and is located in New York City. During the period that he allegedly abused Elliott, Galligan was a brother of the Marist Order, taught at Mt. St. Michael's, and performed services at the Church. Elliott was raised in the State of New Jersey, lived in that state during the alleged abuse, and is still a resident and citizen of that state.

Elliott's grandmother, who lived in the Bronx, New

4

York, and was a parishioner of the Church of the Nativity, introduced Elliott to Galligan. Galligan came to know Elliott's entire family but developed an especially close relationship with Elliott. Beginning in the fall of 1977, when Elliott was eight years old, Galligan allegedly began to sexually assault Elliott. Elliott charges that Galligan continued his abuse on a regular basis between 1977 and 1983 at various locations in New York and New Jersey. Elliott also asserts that Galligan abused him in Virginia and in Delaware where he took Elliott on two out-of-state trips.

## III.  PROCEDURAL HISTORY

Elliott originally filed his complaint in the Superior Court of Delaware, in and for New Castle County, on June 23, 2009. Elliott thereafter filed an amended complaint, in which he alleged that there was an agency relationship between Galligan and the Institutional Defendants. In this vein, Elliott contended that the Institutional Defendants employed Galligan at all relevant times and were responsible for his supervision. Elliott maintained that the Institutional Defendants gave Galligan the power to act on their behalf, and that all of Galligan's actions with respect to Elliott fell within the scope of that authority, were connected to Galligan's routine job duties, and were for the benefit of the Institutional Defendants. Elliott asserted also that the Institutional Defendants ratified, or, at a minimum, did not repudiate Galligan's abuse of him to the extent that the abuse may have occurred outside the scope of the authority that the Institutional Defendants granted to Galligan. In this vein,

Elliott alleged that the Institutional Defendants had actual or constructive knowledge of Galligan's sexual abuse of Elliott.

On the basis of these and other allegations that Elliott made concerning the Institutional Defendants' awareness of ongoing sexual abuse of children in the Catholic Church generally, Elliott contended that the Institutional Defendants had a duty to prevent Galligan from abusing him and to establish measures to protect him against such abuse. Elliott alleged that the Institutional Defendants, acting negligently and grossly negligently, breached those duties causing Elliott mental, emotional, and physical injury. In addition to Elliott's claim that the Institutional Defendants were negligent, his complaint included a number of other theories of liability, including breach of fiduciary duty, assault and battery, fraud, breach of an implied contract, conspiracy, and aiding and abetting.

Defendants removed this action to the District Court on the basis of diversity of citizenship. Thereafter, the Archdiocese and the Church of the Nativity moved under Federal Rule of Civil Procedure 12(b)(2) to dismiss all claims against them on the ground that the Court lacked personal jurisdiction over them. Alternatively, they sought a dismissal under Rule 12(b)(6) on the ground that New York law applied to Elliott's claims and the action was untimely under New York's statutes of limitations such that Elliott failed to state a claim. Elliott responded that the Court possessed personal jurisdiction over those defendants and that Delaware law applied, such that his claims were timely under the Delaware Child Victim's Act of 2007 (the "CVA"),

Del. Code Ann. tit. 10, § 8145(a)-(b) (Supp. 2010).[1]

---

[1]In relevant part, the CVA provides:

> (a) A cause of action based upon the sexual abuse of a minor by an adult may be filed in the Superior Court of this State at any time following the commission of the act or acts that constituted the sexual abuse. A civil cause of action for sexual abuse of a minor shall be based upon sexual acts that would constitute a criminal offense under the Delaware Code.
>
> (b) For a period of 2 years following July 9, 2007, victims of child sexual abuse that occurred in this State who have been barred from filing suit against their abusers by virtue of the expiration of the former civil statute of limitations, shall be permitted to file those claims in the Superior Court of this State. If the person committing the act of sexual abuse against a minor was employed by an institution, agency, firm, business, corporation, or other public or private legal entity that owned [sic] a duty of care to the victim, or the accused and the minor were engaged in some activity over which the legal entity had some degree of responsibility or control, damages against the legal entity shall be awarded under this subsection only if there is a finding of gross negligence on the part of the legal entity.

On December 21, 2009, the District Court granted the Archdiocese's and the Church's motion, finding that it could not exercise personal jurisdiction over either defendant. Alternatively, the Court concluded that New York law applied under Delaware's choice-of-law jurisprudence and that New York's statutes of limitations barred Elliott's claims.[2] See Elliott v. The Marist Bros. of the Schs., Inc., 675 F. Supp. 2d 454 (D. Del. 2009). Elliott subsequently moved for the Court to reconsider its order on the basis of an October 5, 2009 bench ruling that a judge of the Delaware Superior Court issued in a group of cases not involving Elliot that included allegations of sexual abuse against Catholic institutions similar to those Elliott brought against the Institutional Defendants. Elliott contended

---

Del. Code Ann. tit. 10, § 8145(a)-(b). In Sheehan v. Oblates of St. Francis de Sales, 15 A.3d 1247, 1258-60 (Del. 2011), the Delaware Supreme Court upheld the CVA against facial constitutional challenges.

[2]In this action, in which jurisdiction is predicated on diversity of citizenship, the District Court in Delaware applied Delaware choice of law principles. See Petrella v. Kashlan, 826 F.2d 1340, 1343 (3d Cir. 1987). This choice of law led the Court to dismiss the case because it applied New York substantive law, which requires contract and fraud actions to be filed within six years and personal injury actions to be filed within three years of the accrual of the cause of action. See N.Y.C.P.L.R. §§ 203(a), 213(2), 213(8), 214(5) (McKinney 2003). We do not here reach the question of whether that application of New York substantive law was correct.

that application of the Superior Court's interpretation of the CVA in his case would have allowed the Court to exercise personal jurisdiction over the Institutional Defendants and allowed the Court to apply Delaware law. The Court denied Elliott's motion.

The Marist Brothers and Mt. St. Michael's answered Elliott's complaint without objecting to the District Court's exercise of jurisdiction over them. Later, however, those entities moved for judgment on the pleadings pursuant to Rule 12(c) on the basis of the portion of the Court's December 21 decision regarding the application of New York law and its statutes of limitations. On September 21, 2010, the Court granted the Marist Brothers' and Mt. St. Michael's' motion, as it followed its prior ruling that New York law applied and barred Elliott's claims.

Galligan answered Elliott's complaint, and the claims against him remain pending before the District Court. That Court, however, has stayed those proceedings during our consideration of this appeal.

After the Marist Brothers and Mt. St. Michael's filed their motion for judgment on the pleadings but before the District Court granted that motion, the Archdiocese and the Church on September 16, 2010, moved for entry of final judgment pursuant to Rule 54(b). Then, after the Court granted the Marist Brothers' and Mt. St. Michael's' motion for judgment on the pleadings, all four of the Institutional Defendants and Elliott filed a joint stipulation requesting the entry of final judgment pursuant to Rule 54(b) in accordance with the Court's

disposition of the case against all four of the Institutional Defendants. On November 30, 2010, the Court denied the Archdiocese's and the Church's prior Rule 54(b) motion, stating that "[t]he court generally does not enter judgment against parties following motions to dismiss." Appellant's resp. to the Clerk's order of July 12, 2011 ("Appellant's resp.") tab C at 2. Instead, the Court on November 30, 2010, pursuant to 28 U.S.C. § 1292(b) certified for interlocutory appeal its orders dismissing Elliott's claims as to all the Institutional Defendants. Elliott, however, did not file a petition for leave to file an interlocutory appeal, and neither the parties nor the Court took any further action in this case for approximately the next six months.

On May 27, 2011, the Institutional Defendants and Elliott once again filed a stipulation and proposed order requesting the entry of final judgment under Rule 54(b). This time, on June 9, 2011, the District Court adopted the parties' proposed order and directed the entry of final judgment under Rule 54(b) in favor of the Institutional Defendants. In doing so, the Court recited the procedural history of the case, and stated that the parties "have conferred and respectfully request the entry of final judgments pursuant to Federal Rule of Civil Procedure 54(b) so that [Elliott's] appeals may proceed before the Third Circuit and may be resolved with finality prior to any trial going forward in this matter." It thereafter directed that final judgments be entered pursuant to Rule 54(b) for the Institutional Defendants. Appellant's resp. tab A at 1-3. The Court did not, however, expressly determine that there was "no just reason for delay" in the entry of a final judgment, an omission that, as we shall see, has dispositive consequences for this appeal, nor did it set forth a statement of reasons supporting its entry of a Rule 54(b)

10

judgment.

Following Elliott's filing of a notice of appeal, the Clerk of this Court on July 12, 2011, ordered the parties to file briefs on the issue of whether the District Court's certification satisfied the requirements of Rule 54(b) such that we could exercise jurisdiction over the appeal. In her order, the Clerk indicated that the "orders appealed from do not dismiss all claims as to all parties and do not appear to have been properly certified under Fed. R. Civ. P. 54(b)." The parties thereafter filed briefs on this issue, all contending that the District Court's order of June 9, 2011, satisfies the provisions of Rule 54(b). On October 12, 2011, a motions panel of this Court referred the jurisdictional question to the merits panel and instructed the parties to address the issue further in their briefs on the merits. In the time from the parties' receipt of our Clerk's order until the day of the oral argument on this appeal none of the parties asked the District Court to amend the June 9, 2011 order to overcome the possible jurisdictional problem the Clerk identified in her July 12, 2011 order or moved that we remand the matter to the District Court so that the parties could ask it to do so.

## IV.  JURISDICTION

The District Court had subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1441 and 1332. The parties contend that we have jurisdiction pursuant to 28 U.S.C. § 1291 by virtue of the District Court's entry of a final judgment pursuant to Rule 54(b). The parties, however, cannot by their

consent vest this Court with jurisdiction over this appeal. Rather, as always, we must satisfy ourselves that we have jurisdiction. See Arizonans for Official English v. Arizona, 520 U.S. 43, 73, 117 S.Ct. 1055, 1071 (1997) ("[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it.") (internal quotation marks and citation omitted); Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104 (1982) ("[N]o action of the parties can confer subject-matter jurisdiction upon a federal court."); In re Resorts Int'l, Inc., 372 F.3d 154, 161 (3d Cir. 2004) ("Subject matter jurisdiction cannot be conferred by consent of the parties.") (internal quotation marks and citation omitted); Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004) ("[P]arties may not confer subject matter jurisdiction by consent.").

Our jurisdictional inquiry must precede any discussion of the merits of the case for if a court lacks jurisdiction and opines on a case over which it has no authority, it goes "beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94, 118 S.Ct. 1003, 1012 (1998); see also Cunningham v. R.R. Ret. Bd., 392 F.3d 567, 570 (3d Cir. 2004) ("We must resolve the threshold jurisdictional issue before reaching the merits . . . ."). Accordingly, if we determine that we do not have jurisdiction over this appeal, our "only function remaining [will be] that of announcing the fact and dismissing the cause." Steel Co., 523 U.S. at 94, 118 S.Ct. at 1012 (quoting Ex parte McCardle, 74

12

U.S. (7 Wall.) 506, 514 (1868)).

## V. ANALYSIS

### A. A District Court's Obligations Under Rule 54(b)

"This Court's appellate jurisdiction is conferred and limited by Congress's grant of authority."  Berckeley Inv. Grp., Ltd. v. Colkitt, 259 F.3d 135, 139 (3d Cir. 2001) ("Berckeley I") (citing Sheldon v. Sill, 49 U.S. (8 How.) 441, 449 (1850) ("Courts created by statute can have no jurisdiction but such as the statute confers.")).  Under 28 U.S.C. § 1291, "[t]he courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States."  Generally, an order which terminates fewer than all claims pending in an action or claims against fewer than all the parties to an action does not constitute a "final" order for purposes of 28 U.S.C. § 1291.  See Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 431-32, 76 S.Ct. 895, 897-98 (1956); Carter v. City of Phila., 181 F.3d 339, 343 (3d Cir. 1999).  Under Rule 54(b), however, a district court may convert an order adjudicating less than an entire action to the end that it becomes a "final" decision over which a court of appeals may exercise jurisdiction under 28 U.S.C. § 1291.

In a case such as this one that is before a court of appeals pursuant to Rule 54(b), the court's jurisdiction thus "depends upon whether the district court properly granted 54(b) certification."  Allis-Chalmers Corp. v. Phila. Elec. Co., 521

F.2d 360, 362 (3d Cir. 1975). Rule 54(b) (emphasis added) provides:

> Judgment on Multiple Claims or Involving Multiple Parties. When an action presents more than one claim for relief — whether as a claim, counterclaim, crossclaim, or third-party claim — or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties <u>only if the court expressly determines that there is no just reason for delay</u>. <u>Otherwise, any order or other decision, however designated</u>, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties <u>does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment</u> adjudicating all the claims and all the parties' rights and liabilities.

By allowing a district court to enter a final judgment on an order adjudicating only a portion of the matters pending before it in multi-party or multi-claim litigation and thus allowing an immediate appeal, Rule 54(b) "attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties." <u>Allis-Chalmers</u>, 521 F.2d at 363.[3]

---

[3] A Rule 54(b) entry of final judgment may have consequences beyond allowing an immediate appeal as it may allow execution

14

Certification of a judgment as final under Rule 54(b) is the exception, not the rule, to the usual course of proceedings in a district court. "Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims. The function of the district court under the Rule is to act as a dispatcher." Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 8, 100 S.Ct. 1460, 1465 (1980) (internal quotation marks and citation omitted); see also Panichella v. Pa. R.R. Co., 252 F.2d 452, 455 (3d Cir. 1958) ("[Rule] 54(b) orders should not be entered routinely or as a courtesy or accommodation to counsel. The power which this Rule confers upon the trial judge should be used only in the infrequent harsh case as an instrument for the improved administration of justice and the more satisfactory disposition of litigation in the light of the public policy indicated by statute [28 U.S.C. § 1291] and rule.") (internal quotation marks and citation omitted). Rule 54(b) thus requires that a district court first determine whether there has been an ultimate disposition on a cognizable claim for relief as to a claim or party such that there is a "final judgment." Curtiss-Wright Corp., 446 U.S. at 7, 100 S.Ct. at 1464.[4] If it determines that there has been such a disposition, "the district court must go on to determine whether there is any just reason for delay," taking into account

on a judgment, a procedure that otherwise might not be available. See 10 J. Moore et al. Moore's Federal Practice ¶ 54.26 [4] at 54-92 (3d ed. 1997).

[4] Of course, certain orders lack sufficient finality so that a district court cannot certify them as final under Rule 54(b). Thus, it could not be suggested that an order denying a motion for summary judgment could be certified as final under the rule.

15

"judicial administrative interests as well as the equities involved." Id. at 7-8, 100 S.Ct. at 1464-65.

This latter requirement, that a district court "must go on to determine whether there is any just reason for delay," is not merely formalistic.  Rule 54(b) makes clear that a district court may direct entry of a final judgment under the rule "only if the court expressly determines that there is no just reason for delay." See also Curtiss-Wright, 446 U.S. at 3, 100 S.Ct. at 1462 ("[Rule 54(b)] allows a district court dealing with multiple claims or multiple parties to direct the entry of final judgment as to fewer than all of the claims or parties; to do so, the court must make an express determination that there is no just reason for delay.") (emphasis added).  Otherwise, if the court does not make that determination, "any order or other decision, however designated" that does not dispose of all claims against all parties is not final under Rule 54(b).

Consequently, where an order purports to certify a judgment as final under Rule 54(b) but lacks the express determination that the rule requires, a court of appeals lacks jurisdiction over the order because it is not a "final" judgment under either Rule 54(b) or under the traditional standards of 28 U.S.C. § 1291.  Thus, Rule 54(b)'s "express" determination is a jurisdictional prerequisite.  See Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 202 (3d Cir. 2006) ("Berckeley II") ("We concluded [in Berckeley I] that . . . an express determination [that there is 'no just reason for delay'] [i]s a jurisdictional prerequisite required by Rule 54(b) . . . ."); see also Bhatla v. U.S. Capital Corp., 990 F.2d 780, 786 n.6 (3d Cir. 1993) (In the absence of an express determination that there is no just reason

16

for delay and an express direction for the entry of judgment under Rule 54(b), "the order is not final and no appeal is possible.").

In Allis-Chalmers, we faced the question of whether a district court's formulaic recitation of the "no just reason for delay" determination sufficed under Rule 54(b). See 521 F.2d at 362. We determined that mechanical adherence to the rule was inadequate and held that "Rule 54(b) requires the district court to do more than just recite the 54(b) formula of 'no just reason for delay.'" Id. at 364. We concluded that a district court granting judgment under Rule 54(b) "should clearly articulate the reasons and factors underlying its decision to grant 54(b) certification."[5] Id. In this connection, we adopted the Court of Appeals for the Second Circuit's approach in requiring that a district court instead of merely "incorporating in the certificate . . . the conclusory language of Rule 54(b), . . . make a brief reasoned statement in support of its determination that, 'there is no just reason for delay.'" Id. (quoting Gumer v. Shearson, Hammill & Co., Inc., 516 F.2d 283, 286 (2d Cir. 1974)). Thus, after Allis-Chalmers, "[w]e consistently require that district courts provide a statement of reasons when entering final judgment under Rule 54(b)." Carter, 181 F.3d at 343 (citations omitted); see also Waldorf v. Shuta, 142 F.3d 601, 610-11 (3d

---

[5]Curtiss-Wright abrogated our opinion in Allis-Chalmers to the extent that we indicated that the presence of a counterclaim weighed heavily against a district court's certification of a Rule 54(b) judgment. See Carter, 181 F.3d at 345 n.14. Our requirement of the statement of reasons as set forth in Allis-Chalmers, however, remains in place.

17

Cir. 1998) ("We consistently have required district courts to provide a reasoned opinion as a prerequisite for appellate review of a judgment certified as final.").

In Carter, however, we determined that, unlike the need for an express determination that there is "no just reason for delay," our judicially-imposed requirement under Allis-Chalmers that a district court set forth a statement of reasons for its certification "stands not as a jurisdictional prerequisite but as a prophylactic means of enabling the appellate court to ensure that immediate appeal will advance the purposes of the rule." 181 F.3d at 345.  Accordingly, "the absence of an explanation by the district court does not pose a jurisdictional bar when the propriety of the appeal may be discerned from the record."  Id. at 346.

> B.  The District Court's Rule 54(b) Certification Lacks an "Express" Determination and a Statement of Reasons.

Elliott contends that the portion of the District Court's Rule 54(b) order stating that the parties requested the entry of a Rule 54(b) judgment "so that [Elliott's] appeals may proceed before the Third Circuit and may be resolved with finality prior to any trial going forward in this matter," Appellant's resp. tab A at 2, satisfies Rule 54(b)'s "express" determination requirement.  Arguably, though we could infer from the Court's order that it agreed with the parties' statement, we will not impute to the Court its summary of the parties' justification for seeking a Rule 54(b) judgment.  Moreover, even if we regarded that recitation as the language of the Court, it does not incorporate an express determination that there is no just reason

18

for delay.

At oral argument, Elliott focused on the portion of the Rule 54(b) order that states that "it would be most efficient to hold a single trial." Id. Yet Elliott does not derive that quotation from the District Court's findings but rather he takes it from the Court's summary of an October 2010 teleconference that the Court held prior to denying Rule 54(b) certification the first time the parties moved for it. See id. ("On October 13, 2010, this Court held a teleconference to discuss the parties' Joint Stipulation and Order. During that teleconference, the Court and all parties agreed that it would be most efficient to hold a single trial after the resolution of the appeals . . . ."). In any event, the Court's statement would not reflect the Court's determination that there is no just reason for delay in entry of a final judgment; it simply would be an observation of one of the advantages of Rule 54(b) certification. After all, even if we assume that disposition of this case in a single trial might advance efficiency and that the outcome of this appeal, if we exercised jurisdiction, would lead to the Court on remand resolving the case with only one trial, it is still possible that there might be a just reason for a delay in entry of a final judgment. In any event, the Court did not "expressly determine[] that there is no just reason for delay," nor did it employ similar language that could have been intended to convey a finding that it had reached such a conclusion.

The District Court also did not set forth a statement of reasons as to why there was no just reason for delay in entry of a final judgment as Allis-Chalmers required it to do when entering a Rule 54(b) final judgment. The parties argue that the Court's

19

June 9, 2011 order certifying the entry of a Rule 54(b) judgment and its earlier November 30, 2010 order <u>denying</u> entry of such a judgment and instead certifying this matter for interlocutory appeal together set forth an adequate rationale for the Court's entry of the Rule 54(b) judgment. We note first that we find surprising the parties' reliance on the Court's earlier order denying a Rule 54(b) judgment. It is not logical to contend that the Court's reasoning in denying certification under Rule 54(b) six months prior to its ultimate certification of the Rule 54(b) judgment constitutes a statement of reasons for that later certification. In point of fact, the actual Rule 54(b) order does not contain any statement of reasons justifying the Court's decision to certify the entry of final judgment under Rule 54(b).[6]

In addressing the consequence of the omissions in the District Court's June 9, 2011 order, we first consider the effect of the District Court's failure to make the express finding of "no just reason for delay" because, while in <u>Carter</u> we concluded that a district court's failure to set forth a statement of reasons is not a jurisdictional defect so long as a court of appeals may ascertain the rationale from the record, <u>see</u> 181 F.3d at 345-46, a

---

[6]A comparison of the District Court's order certifying the Rule 54(b) judgment with the parties' stipulation and proposed order demonstrates that the Court adopted the parties' proposed order verbatim without providing any additional text. While the Court's determination to adopt the parties' proposed order verbatim is not in itself problematic, its omission of any additional reasoning leads us to question the parties' contention that the Court expressly set forth its reasons for granting a Rule 54(b) judgment in its certification order.

district court's failure to include the express determination that there is no just reason for delay poses a jurisdictional hurdle, see Berckeley II, 455 F.3d at 202-03.  In this vein, we reject the parties' contention that Carter somehow obviates a district court's obligation to make the "express" determination of "no just reason for delay" or that under Carter we may overlook the district court's failure to do so.  We rejected this interpretation of Carter in Berckeley I, noting that "Carter was concerned with whether the court's failure to articulate the factors discussed in Allis-Chalmers divested us of appellate jurisdiction, not whether the express determination of 'no just cause for delay' was required for certification under Rule 54(b)."  See Berckeley I, 259 F.3d at 141.

C.  Rule 54(b)'s "Express" Determination Requirement

From the time of our decision in Berckeley I, it has been quite clear that a district court when entering a final judgment pursuant to Rule 54(b) must make an express finding that there is no just reason for delay in entry of the judgment and that its failure to do so deprives us of jurisdiction over an appeal from the judgment.  The exact contours of the district court's obligation, and, more precisely, the question of whether a district court must employ the talismanic phrase "no just reason for delay" to satisfy Rule 54(b) are, however, open questions in this Court.  We came close to settling the matter in Berckeley I, and we thus begin our discussion of this issue with that case.

In Berckeley I, the district court's order directed "the entry of final judgment" in favor of the plaintiff against one of the defendants but the order contained neither "'an express

21

determination that there is no just reason for delay,'" nor "a clear indication from the District Court's rulings that it was considering all the questions relevant to a Rule 54(b) determination." Id. at 140-41 & n.5 (quoting Fed. R. Civ. P. 54(b)). We observed that "nowhere in the District Court's orders resolving th[e] case did it use the words 'no just cause for delay' or make any statement of an indisputably similar effect." Id. at 141. The parties argued that we could overlook the district court's failure in this regard because we could glean the court's intent from "language it used to praise expedition in the resolution of the proceedings," but "[w]e decline[d] to adopt the position that general references to the necessity of expedition can substitute for the 'express' determination required by the Rule." Id.

In rejecting the Berckeley I parties' contention that Carter eliminated the "express" determination requirement, we noted that only one court, the Court of Appeals for the Fifth Circuit in Kelly v. Lee's Old Fashioned Hamburgers, Inc., 908 F.2d 1218 (5th Cir. 1990) (en banc) (per curiam), has held that, notwithstanding a district court's failure to state expressly in a Rule 54(b) order that there was "no just cause for delay," a court of appeals could exercise jurisdiction over an appeal from the order. Berckeley I, 259 F.3d at 142. In Kelly, a closely divided en banc panel held that "[i]f the language in the order appealed from, either independently or together with related portions of the record referred to in the order, reflects the district court's unmistakable intent to enter a partial final judgment under Rule 54(b), nothing else is required to make the order appealable." 908 F.2d at 1220. Notably, while the Kelly majority stated its holding in terms of a rejection of the notion that a district court

22

is required "to mechanically recite the words 'no just reason for delay,'" id., the majority's "unmistakable intent" standard releases a district court not only from the obligation to state that talismanic phrase but also to indicate with any similar language that it has made the express determination that Rule 54(b) requires. Thus, in Kelly the majority found that the district court's order, which was captioned "F.R.C.P. 54(b) JUDGMENT" and directed "that there be final judgment entered pursuant to Federal Rule of Civil Procedure 54(b)," satisfied Rule 54(b) although it contained no other statements indicating that the district court had considered whether there was cause for delay. See id. at 1221. In contrast, the dissent in Kelly interpreted Rule 54(b) to require that a district court either recite the talismanic phrase "there is no just reason for delay" or some paraphrase thereof to satisfy the "express" determination requirement. See id. at 1222.

We found Kelly distinguishable in Berckeley I because the district court's rulings in Berckeley I did not make clear its intent to enter a judgment pursuant to Rule 54(b) whereas the district court in Kelly plainly intended to enter a Rule 54(b) judgment. See Berckeley I, 259 F.3d at 143-44. On this ground, we found the Rule 54(b) order in Berckeley I invalid and dismissed the appeal for lack of jurisdiction. See id. at 144-46. In Berckeley I, we thus noted that "[t]he manner in which we dispose of this case does not require us to address, head on, the issue presented in Kelly. Thus, we leave for another day deciding whether the words 'no just cause for delay' are required in haec verba to confer appellate jurisdiction under Rule 54(b)." Id. at 142 n.7. We accordingly "abstain[ed] from considering the merits of the [Court of Appeals for the] Fifth

23

Circuit's position in Kelly until an analogous case, one in which there is an unmistakable intent to enter judgment under Rule 54(b) but no express determination of 'no just cause for delay,' presents itself." Id. at 145. That case now has arrived.

Here, the District Court's intent to enter judgment under Rule 54(b) is unmistakable. The Court's June 9, 2011 order directs that "[f]inal judgment be entered pursuant to Fed. R. Civ. P. 54(b) in favor of" the Institutional Defendants and against Elliott "on all claims." Appellant's resp. tab A at 3. Nevertheless, in Berckeley I we strongly hinted at our inclination to side with the dissenters in Kelly. We noted that the "'touch the bases' approach taken by the Kelly dissenters, see Kelly, 908 F.2d at 1223, has merit both because it is consistent with the plain meaning of Rule 54(b) and because it would result in a predictable process by which appeals are taken under that rule." Berckeley I, 259 F.3d at 142 n.7. For these same reasons, today we conclude that the dissent in Kelly offered the correct reading of Rule 54(b).

We hold that even in a case such as this one, in which a district court clearly intends to enter judgment pursuant to Rule 54(b), it must state expressly that it has determined that there is no just reason for delay. If it fails to do so, that judgment is not a final judgment under Rule 54(b), and we do not have jurisdiction over an appeal from that judgment. We note that although we part ways with the Court of Appeals for the Fifth Circuit on this issue, our decision in this case aligns us with the positions of the Courts of Appeals for the Second, Ninth, Tenth, and District of Columbia Circuits. See Blackman v. Dist. of Columbia, 456 F.3d 167, 175-76 (D.C. Cir. 2006); Stockman's

24

Water Co., LLC v. Vaca Partners, L.P., 425 F.3d 1263, 1265 (10th Cir. 2005); Nat'l Assoc. of Home Builders v. Norton, 325 F.3d 1165, 1167 (9th Cir. 2003); LTV Steel Co. v. United Mine Workers (In re Chateaugay Corp.), 928 F.2d 63, 64 (2d Cir. 1991) (per curiam).[7]

We also are persuaded, however, that Rule 54(b) does not require that a district court use the talismanic phrase "there is no just reason for delay." The district court may state that it has

---

[7]The Courts of Appeals for the Seventh and Eighth Circuits appear to have varied their respective positions on whether an "express" determination is required under Rule 54(b). Compare Granack v. Cont'l Cas. Co., 977 F.2d 1143, 1145 (7th Cir. 1992) (holding that order certified under Rule 54(b) not appealable because certification lacked express determination and stating that "[b]y definition, an express determination cannot be made implicitly") and Mooney v. Frierdich, 784 F.2d 875, 876 (8th Cir. 1986) (dismissing appeal for lack of jurisdiction because court failed to set forth any reasoning for its certification and failed to make express determination) with Alexander v. Chicago Park Dist., 773 F.2d 850, 854-55 (7th Cir. 1985) (concluding that order satisfied Rule 54(b) where it lacked express determination and direction but parties clearly knew of their right to appeal) and United States v. Glenn, 585 F.2d 366, 367 n.2 (8th Cir. 1978) (rejecting argument that district court's order was not final under Rule 54(b) because it lacked express finding where there was "no doubt that the district court intended its orders to be final judgments for purposes of appeal").

25

determined expressly that "there is no just reason for delay" using those precise words, or it may paraphrase or use language "of an indisputably similar effect," Berckeley I, 259 F.3d at 141, so long as the district court's order clearly contains the "express" determination Rule 54(b) requires.

In ascertaining the meaning of Rule 54(b)'s "express" determination requirement, we begin, as with any interpretive exercise, with the text of the rule. "The Supreme Court and this Court have repeatedly held that the Federal Rules of Civil Procedure, like any other statute, should be given their plain meaning." Berckeley I, 259 F.3d at 142 n.7 (citing Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc., 498 U.S. 533, 540, 111 S.Ct. 922, 928 (1991); United States v. Nahodil, 36 F.3d 323, 328 (3d Cir. 1994)) (some citations omitted); see also Hagan v. Rogers, 570 F.3d 146, 157 (3d Cir. 2009) (same). "As with a statute, our inquiry is complete if we find the text of the Rule to be clear and unambiguous." Business Guides, 498 U.S. at 540-41, 111 S.Ct. at 928.

The text of Rule 54(b) is quite plain.[8] It provides that

_____

[8]The Court of Appeals for the Fifth Circuit in Kelly and this Court in Berckeley I analyzed the version of Rule 54(b) that preceded the current version of the rule. The earlier version provided in relevant part that a district court "may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." See Berckeley I, 259 F.3d at 140. The rule provided further that "[i]n the absence of such

26

"the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." (Emphasis added). Rule 54(b)'s use of the word "expressly" to modify "determines" makes clear that the district court is required to determine and to articulate the fact that it has determined that there is no just reason for delay. The plain meaning of "express" compels this conclusion. See Black's Law Dictionary 661 (9th ed. 2009) (defining "express" as "[c]learly and unmistakably communicated; directly stated"); Webster's Third New International Dictionary 803 (Merriam-Webster 1986) (defining "express" as "directly and distinctly stated or expressed rather than implied or left to reference"). As we stated in Berckeley I,

> Under [the dictionary] definition [of 'express'], 'express determination that there is no just reason for delay' can mean only one thing: The judge's very words must state specifically that he or she has decided that there is no just reason for delay. Kelly, 908 F.2d at 1222. Thus, the argument proceeds, it is self-evident that the first sentence of Rule 54(b) requires an explicit manifestation that the district court has determined there is no

determination and direction, any order or other form of decision, however, designated," which is not a final judgment as to all claims and parties is not a final judgment under Rule 54(b). Id. In 2007, that language was changed to the current form of Rule 54(b), but the stylistic changes did not change the substance of the rule.

> just cause for delay and directing the entry of final judgment.

259 F.3d at 142 n.7 (some internal quotation marks omitted). On this same ground, the dissent in Kelly determined that Rule 54(b)'s requirement of an "express" determination precludes the possibility that a district court's order may satisfy Rule 54(b) where a determination of no just reason for delay is "implied" but is not "expressed" in the order. See Kelly, 908 F.2d at 1222-24. In light of the straightforward definition of "express," we agree with that conclusion.

The second sentence of Rule 54(b) reinforces our understanding of the rule. It provides that "[o]therwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties" is not a final judgment under Rule 54(b). (Emphasis added). This sentence anticipates the precise circumstance in this case, in which the district court designates or titles an order to be a Rule 54(b) final judgment but fails to make the express determination that the rule requires. The effect of the omission is clear: it renders non-final any purported Rule 54(b) judgment in which the district court fails to make the "express determination." The inclusion of this clarifying statement thus "serves to underscore the importance of the 'express determination' requirement." Kelly, 908 F.2d at 1226.

The Kelly majority entirely failed to address the text of Rule 54(b) and in the absence of a convincing alternative interpretation of the rule, we are persuaded by the dissent's interpretation. Cf. Taylor v. F.D.I.C., 132 F.3d 753, 760 (D.C.

28

Cir. 1997) (discussing Kelly and noting that "[t]he majority . . . never really answered the dissenters' point that 'express,' the Rule's modifier of 'determination,' does not normally mean 'implied'"). In short, we conclude that as its text makes plain, Rule 54(b) requires that a district court make an "express" determination that there is no just reason for delay in entry of a final judgment. This provision means that the district court must articulate in the Rule 54(b) order that it has made such a determination.

We also find persuasive the Kelly dissent's recitation of the background of the 1946 amendments to the rule, which added the "express" determination requirement. As the dissent in Kelly noted, prior to 1946, "situations arose where district courts made a piecemeal disposition of an action and entered what the parties thought amounted to a judgment, although a trial remained to be had on other claims. . . ." Kelly, 908 F.2d at 1223 (quoting 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 54.01 [6] at 54-15 (2d ed. 1988)). "In the interim the parties did not know their ultimate rights, and accordingly took an appeal, thus putting the finality of the partial judgment in question." Id. The confusion, waste, and expense to litigants that resulted from this uncertainty prompted the addition of the certification requirement to Rule 54(b). See Kelly, 908 F.2d at 1223. If we read Rule 54(b)'s "express" determination requirement as requiring no more than that there be sufficient evidence in the record from which a court of appeals could infer that a district court made an "implied" determination that there was no just reason for delay in entry of a final judgment, we would vitiate the very intended effect of the "express" determination requirement. On the other hand, as

29

the Kelly dissent observed, requiring strict compliance with Rule 54(b) "avoid[s] protective, duplicative appeals and, most importantly, . . . prevent[s] the harsh result of a party's losing its right to appeal because it was not aware that a final, appealable judgment had been entered." 908 F.2d at 1227.

Our interpretation of Rule 54(b) heeds the Supreme Court's direction that we give federal rules their plain meaning. See Bus. Guides, 498 U.S. at 540, 111 S.Ct. at 928. Moreover, adherence to the rule's text has the added virtue of maintaining the proper respective roles of the district courts and the courts of appeals in considering Rule 54(b) orders. If we regarded a judgment as final in the absence of some statement indicating that the district court has determined that there is no just reason for delay in its entry we would have to assume — without any supporting evidence — that the district court has considered the equitable factors that must inform a Rule 54(b) certification. See Curtiss-Wright, 446 U.S. at 7-8, 100 S.Ct. at 1464-65. At a minimum, in such a scenario it would be quite challenging to review the district court's Rule 54(b) certification for an abuse of discretion. See Fed. Home Loan Mortg. Corp. v. Scottsdale Ins. Co., 316 F.3d 431, 440 (3d Cir. 2003) ("We review a district court's Rule 54(b) certification decision for an abuse of discretion."). After all, how does a court of appeals know if a district court has abused its discretion if it does not know the basis for its exercise of discretion?

The Court of Appeals for the Eighth Circuit recognized this point with respect to a review for an abuse of discretion in Mooney v. Frierdich, 784 F.2d 875, 876 (8th Cir. 1986) (per curiam), where it said that in determining "whether there was an

abuse of discretion" in reviewing a Rule 54(b) certification "if no reasons are furnished as to why that discretion was exercised, [its] judgment as to the propriety of certification is necessarily speculative." In reality, if courts of appeals scrutinize the record in an attempt to glean whether the district court impliedly fulfilled its obligation to make an "express" determination under Rule 54(b) they will come dangerously close to making the determination themselves, thereby appropriating the district courts' "dispatcher" function under the rule. See Curtiss-Wright Corp., 446 U.S. at 8, 100 S.Ct. at 1465. "Discretion to determine whether an immediate appeal should be allowed is, 'with good reason, vested by the rule primarily in the discretion of the District Court as the one most likely to be familiar with the case and with any justifiable reasons for delay.'" New York Football Giants, Inc. v. Comm'r, 349 F.3d 102, 106 (3d Cir. 2003) (quoting Sears, Roebuck & Co., 351 U.S. at 437, 76 S.Ct. at 900-01).

Although we conclude that Rule 54(b) requires an "express" determination, we do not believe that the rule requires that a district court employ the talismanic phrase "there is no just reason for delay" prior to entry of a final judgment. Undoubtedly, such a rigid requirement has the virtue of clarity and predictability in application and we suggest that when the language of the rule reflects a district court's conclusion that the court use it. In this regard, we point out that the further a district court departs from the language of Rule 54(b) the greater the possibility that a court of appeals may conclude that the district court has not satisfied the requirements of the rule. Yet Rule 54(b)'s text does not require the court to employ those precise words; it simply requires it to employ — expressly — some set

31

of words conveying that it has made the Rule 54(b) determination. See Kelly, 908 F.2d at 1222 ("[A]t least arguably, since the rule does not specifically require incantation of the seven very words ['there is no just reason for delay'], they could be paraphrased, provided that the court actually states that it had made that required determination.") (Smith, J., dissenting). Nor do we believe that we ought to impose such a per se rule on the district courts.

Of course, a district court most easily will satisfy Rule 54(b) by stating as we have suggested that it has determined that "there is no just reason for delay." But it also may satisfy Rule 54(b) by paraphrasing that statement or using other language of "indisputably similar effect," Berckeley I, 259 F.3d at 141, in its order that plainly reflects that it has determined that there is no just reason for delay. As way of illustrative example, if a district court expressly states that it could ascertain "no just cause for delaying entry of final judgment" as to certain claims or parties, or that it has determined that there is "no legitimate reason for delaying entry of final judgment," such statements would reflect the district court's determination that there is no just reason for delay. Allowing paraphrases of "no just reason for delay" to satisfy Rule 54(b) strikes the appropriate balance between adherence to Rule 54(b)'s strict requirements and a recognition that a district court can set forth an express determination that there is no just reason for delay without using those exact words. In such a situation, Rule 54(b) is satisfied.

Significantly, it should be clear from the precedents we have cited that we do not impose today a new or onerous requirement on the district courts and this opinion should not

32

come as a surprise. Rule 54(b)'s "express" determination requirement has been facially evident from the rule's text since its amendment in 1946 added the requirement. Yet it also is evident that notwithstanding the numerous cases discussing the rule it is not understood clearly and is sometimes misapplied. As this case well demonstrates, this misapplication causes considerable delay and undoubtedly leads to the parties being required to bear additional costs unless, of course, attorneys absorb these costs.

This problem in the application of Rule 54(b) persists even though in imposing the "statement of reasons" requirement in Allis-Chalmers over 30 years ago we clearly proceeded from the belief that Rule 54(b) requires that a district court explicitly set forth its determination that there is no just reason for delay. See Allis-Chalmers, 521 F.2d at 364 ("A proper exercise of discretion under Rule 54(b) requires the district court to do more than just recite the 54(b) formula of 'no just reason for delay.'") (emphasis added). Indeed, Allis-Chalmers sets upon the district courts a far more significant burden, and, if a district court complies with it and sets forth a statement of reasons for its Rule 54(b) certification, it is a near certainty that the order will contain, by virtue of that discussion, an express determination that there is no just reason for delay.

Though we realize that our disposition of this appeal will cause some efforts expended on this appeal to have been wasted and surely will cause delay in the disposition of this case, we may not ignore the plain requirements of Rule 54(b) to satisfy our desire to avoid this waste and delay. The absence of an "express" determination is a jurisdictional defect, which we may

33

not overlook no matter how significantly the judicial equities may weigh in favor hearing the appeal.  See McBeth v. Himes, 598 F.3d 708, 722 (10th Cir. 2010) ("[E]fficiency for the parties and the court can[not] provide a reason to overlook a jurisdictional deficiency caused by a failure to comply with Rule 54(b).").

In summary, today we make clear that Rule 54(b) means what it says: a district court may certify a judgment under Rule 54(b) only after concluding "that there is no just reason for delay."  A Rule 54(b) order will be valid and provide this Court with jurisdiction over the appeal only if it expressly sets forth that determination, though not necessarily in those precise words.  The District Court here failed to state in its order that it had determined that there was "no just reason for delay" and it failed to use any other language of indisputably similar effect.  Accordingly, the order did not properly certify the judgment under Rule 54(b).  Without a valid Rule 54(b) judgment, we do not have jurisdiction over this appeal as it resolved fewer than all the claims of all the parties, and thus, it is not "final" within the meaning of 28 U.S.C. § 1291.  See Hill v. City of Scranton, 411 F.3d 118, 124 (3d Cir. 2005) ("Without a valid Rule 54(b) order, we do not ordinarily have appellate jurisdiction over a district court order that resolves fewer than all the claims of all the parties in a single action because such orders do not constitute 'final decisions' per 28 U.S.C. § 1291.") (citation omitted).  Accordingly, we must dismiss this appeal for lack of jurisdiction.[9]

---

[9] At the conclusion of argument on this appeal Elliott made an

## VI.  CONCLUSION

For the foregoing reasons, we will dismiss this appeal for lack of jurisdiction.  Our dismissal is without prejudice; thus the parties may seek from the District Court a proper certification under Rule 54(b) and if it is granted Elliott may appeal once more.  In the event that the parties choose to pursue that course, the parties may seek leave from this Court to rely on the extensive briefs and supporting materials that they already have supplied to this Court attendant to the present appeal to be supplemented by additional materials evidencing the proceedings in the District Court after this dismissal.  If there is another appeal, the Clerk of the Court should reassign the matter to a new panel in accordance with this Court's procedure.  The parties will bear their own costs on this appeal.

---

oral motion to which there was no objection to remand the case to the District Court so that the parties could make an application to that Court for entry of a Rule 54(b) judgment in proper form.   We deny this motion as it was untimely.  We believe that our Clerk's order of July 12, 2011, should have alerted the parties as to our want of jurisdiction and caused them to take corrective steps at that time.