**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3223 and 22-3224
_____

GAIL SHIPMAN, individually and as personal representative of the Estate of
Roy Marvin Shipman Jr., deceased; ROY SHIPMAN III; JUSTIN SHIPMAN

v.

AQUATHERM L.P.; N.H. YATES and COMPANY, INC.;
LANDSTAR RANGER, INC.
(E.D. Pa. No. 2:17-cv-05416)

GAIL SHIPMAN, individually and as personal representative of the Estate of
Roy Marvin Shipman Jr., deceased; ROY SHIPMAN III; JUSTIN SHIPMAN

v.

ARCO INDUSTRIAL SALES, INC. d/b/a
Arco Packaging/Janitorial Sales; SIGNODE INDUSTRIAL GROUP LLC
(E.D. Pa. No. 2-18-cv-02922)

Arco Industrial Sales, Inc., d/b/a Arco Packaging/Industrial Sales
Appellant
_____

On Appeal from the United States District Court for the
Eastern District of Pennsylvania
(E.D. Pa. No. 2:17-cv-05416)
(E.D. Pa. No. 2:18-cv-02922)
District Judge:  Honorable Robert F. Kelly
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a) on January 30, 2024

Before: KRAUSE, PORTER, and CHUNG, *Circuit Judges*

_____

OPINION[*]

_____

**PORTER**, *Circuit Judge*.

Roy Marvin Shipman, Jr., a commercial truck driver, was crushed to death after pipes he was transporting fell from his truck. A jury found Arco Industrial Sales, Inc. ("Arco") negligent and found that its negligence was a factual cause of Shipman's injuries. Arco appeals from the District Court's entry of judgment and denial of Arco's motion to mold the verdict. For the reasons that follow, we will remand to the District Court.

I

The litigation following Shipman's accident originally named five Defendants, including Arco. Landstar Ranger, Inc. ("Landstar") was the trucking company for which Shipman worked as an independent contractor. Aquatherm, L.P. ("Aquatherm") was the distributor of the piping; Aquatherm loaded the pipes onto Shipman's truck at its facility in Lindon, Utah. N. H. Yates & Co., Inc. ("Yates") fulfilled customer orders for Aquatherm and warehoused Aquatherm piping at a facility in Pottstown, PA—the facility to which Shipman transported the pipes. Signode Industrial Group, LLC ("Signode") manufactured and supplied the bands used to secure the pipes loaded onto Shipman's truck, as well as the machine used to seal the bands.

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Arco distributed and sold Signode-manufactured products. Signode sold the bands and sealing machine to Arco. Arco sold the bands and sealing machine to Aquatherm, demonstrated how to use the technology, and recommended which bands should be used for securing Aquatherm's pipes in transit.

All five defendants filed crossclaims alleging that liability should fall on one or several other defendants. Signode also moved to dismiss for lack of personal jurisdiction. The District Court transferred Plaintiffs' claims against Signode to the United States District Court for the District of Delaware.[1]

On April 26, 2022, Plaintiffs—Roy Shipman's family—reached confidential settlements with Yates and Aquatherm. Plaintiffs proceeded to trial against Arco and Landstar. During jury deliberations, Plaintiffs agreed to high-low agreements with both; in Arco's case, the parties cabined a unanimous jury verdict award between a minimum of $100,000 and a maximum of $1 million. *See* App. 9–10, 24.

At trial, Arco faced claims for both strict liability and negligence, and Landstar faced a claim for negligence. *See* App. 9. Arco requested that Aquatherm—though excused from the case[2]—be included on the verdict form for the purposes of the negligence claims, which would have been adjudicated under a comparative negligence theory. However, the focus of the case against Arco and Arco's defense ultimately

---

[1] Plaintiffs' claims against Signode were settled and dismissed in April 2023. *See* Order, *Shipman v. Signode Indus. Grp. LLC*, No. 22-cv-00953 (D. Del. Apr. 25, 2023), ECF No. 309.
[2] The Court dismissed Plaintiffs' claim(s) against Aquatherm with prejudice after settlement.

"rested primarily in products liability." App. 11. "Plaintiffs directed their case against Arco based on [its] role as seller of the product and the allegations of negligence against Arco were secondary." App. 11. Reflecting this, the jury instructions stated: "Apportionment of comparative negligence is not applicable to Plaintiffs' claims against Defendant Arco Industrial Sales, Inc. for strict products liability." App. 129.

The jury reached a verdict determining that Arco was strictly liable for Shipman's injuries, and awarded $1,575,000 in damages. The Court entered judgment against Arco in this amount. Despite the strict liability claim against Arco, because of the additional negligence claims against Arco and Landstar, the verdict form also prompted the jury to assess harm-causing negligence comparatively: the jury ascribed 57.5% of the harm-causing negligence to Aquatherm, 23.75% to Arco, 18.75% to Shipman, and 0% to Landstar.

Plaintiffs notified the District Court of their high-low agreement with Arco, requesting vacatur of the Court's judgment awarding $1,575,000, and the Court granted the request. Arco moved to mold the jury's verdict (i.e., re-calculate damages), contending that Arco is "entitled . . . [to] contribution from . . . Aquatherm, despite it having settled with Plaintiff prior to a verdict being reached," and that Arco should have to pay only $669,375 in damages.[3] App. 114. On October 26, 2022, the Court denied the

---

[3] Had comparative negligence been applied, Aquatherm, if still a Defendant, would have been liable for 57.5% of $1.575 million—$905,625. The $669,375 damages amount suggested by Arco represents the remainder of the $1.575 million.

motion. On November 9, 2022, applying the high-low agreement, the District Court entered judgment against Arco for $1 million.

Arco filed a notice of appeal of the judgment and also of the Court's denial of Arco's motion to mold the verdict.

Plaintiffs timely filed a Rule 59(e) motion to amend the judgment to award post-judgment interest. *Shipman v. Arco Industrial Sales*, *Inc*., No. 2:17-cv-05416 (E.D. Pa. Dec. 7, 2022), ECF No. 328. The District Court deferred ruling on the motion "until jurisdiction is returned to the District Court by the Third Circuit." *Id.*, ECF No. 330.

The Defendants' crossclaims were never mentioned in the Joint Pre-Trial Stipulation, nor were they included on the jury's verdict form.

II

As a court of limited jurisdiction, we may exercise appellate jurisdiction only where "authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). By statute, Congress authorizes us to review "final decisions of the district courts." 28 U.S.C. § 1291. Plaintiffs' Rule 59(e) motion and the unresolved crossclaims between Defendants both independently deprive us of jurisdiction to hear Arco's appeal.

First, we lack jurisdiction because Plaintiffs' Rule 59(e) motion to amend the judgment to award post-judgment interest remains unresolved. Under Federal Rule of Appellate Procedure 4, "[i]f a party files a notice of appeal after the court announces or enters a judgment—but before it disposes of any motion listed in Rule 4(a)(4)(A) [such as

a Rule 59(e) motion]—the notice becomes effective to appeal a judgment . . . *when the order disposing of . . . such . . . motion is entered*." Fed. R. App. P. 4(a)(4)(B)(i) (emphasis added). Accordingly, "[t]he timely filing of a Rule 59(e) motion negates any previously filed notice of appeal, depriving the appeals court of jurisdiction over the case until after disposition of the Rule 59(e) motion." *Livingston v. United States*, No. 09-cv-546, 2009 WL 3424181, at *1 (D.N.J. Oct. 20, 2009) (citing *United States v. Rogers Transp. Inc.*, 751 F.2d 635, 636–37 (3d Cir. 1985)); *see also Venen v. Sweet*, 758 F.2d 117, 122 n.6 (3d Cir. 1985).

Second, we also lack jurisdiction because the crossclaims filed by all five original defendants were never resolved—so the District Court's judgment is not "final" within the meaning of 28 U.S.C. § 1291.

When an action involves multiple claims or parties, including crossclaims, the court may direct entry of a final judgment resolving fewer than all of the claims "only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). Accordingly, "we do not ordinarily have appellate jurisdiction over a district court order that resolves fewer than all the claims of all the parties in a single action because such orders do not constitute 'final decisions' per 28 U.S.C. § 1291." *Hill v. City of Scranton*, 411 F.3d 118, 124 (3d Cir. 2005).

Here, the five Defendants filed crossclaims, but the District Court's entry of judgment and related orders did not address the crossclaims. Nor did the District Court determine that there was "no just reason for delay" under Rule 54. Thus, the Court's judgment is not "final" within the meaning of 28 U.S.C. § 1291. *See Elliott v.*

6

*Archdiocese of N.Y.*, 682 F.3d 213, 229 (3d Cir. 2012) ("The District Court here failed to state in its order that it had determined that there was 'no just reason for delay' and it failed to use any other language of indisputably similar effect. Accordingly, the order did not properly certify the judgment under Rule 54(b).").

\* \* \*

We lack jurisdiction over Arco's appeal, so we will remand to the District Court for resolution of Plaintiffs' pending Rule 59(e) motion and Defendants' pending crossclaims.