FILED
United States Court of Appeals
Tenth Circuit

December 17, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RICHARD WALTMAN,

      Plaintiff - Appellant,

v.

GEORGIA-PACIFIC, LLC,

      Defendant - Appellee.

No. 12-8082
(D.C. No. 2:09-CV-00280-NDF)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, **HOLLOWAY**[**] and **HOLMES**, Circuit Judges.

Richard Waltman appeals from the district court's partial award of summary

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

[**]     The late Honorable William J. Holloway, Jr., United States Senior Circuit Judge, heard oral argument in this case, but passed away prior to the case's final resolution. In other words, Judge Holloway did not cast a vote regarding this order and judgment, and he had no role in the preparation thereof. "The practice of this court permits the remaining two panel judges if in agreement to act as a quorum in resolving the appeal." *United States v. Wiles*, 106 F.3d 1516, 1516 n.* (10th Cir. 1997); *see also* 28 U.S.C. § 46(d) (noting that a circuit court may adopt procedures permitting disposition of an appeal where a remaining quorum of a panel agrees on the disposition). Consequently, the remaining panel members have acted as a quorum with respect to this appeal and, for the reasons explicated below, have voted to **dismiss** it for lack of jurisdiction.

judgment to Georgia-Pacific, LLC ("G-P"[1]) in the lawsuit he filed after suffering serious physical injuries while working on G-P's premises. Mr. Waltman contends that the district court improperly granted partial summary judgment to G-P after determining that G-P owed him no duty of care. The issue presented for our consideration is whether G-P in fact owed Mr. Waltman—a service provider of its independent contractor—a duty of care, either by retaining control over the hazard that caused his injuries or by assuming affirmative safety duties to him. However, we actually do not reach this merits question because we lack a final, appealable order to review. We consequently have no subject-matter jurisdiction over Mr. Waltman's appeal and **dismiss** it on that basis.

## I

We begin with an overview of the salient background facts underlying Mr. Waltman's lawsuit. We then undertake a detailed recitation of this case's complex procedural history to demonstrate why we are not situated to reach the merits of this appeal.

## A

Mr. Waltman was a long-haul truck driver who provided services to R. Waltman Trucking ("RWT"). RWT likewise provided services on an independent-contractor basis to G-P, such as pick-up and transportation. As a large-scale manufacturer of various building materials, G-P regularly sends its products across the continental United States

---

[1] The district court frequently referred to Georgia-Pacific as "G-P," and we retain this appellation in the interest of consistency.

by flatbed truck.

It is commonplace for truck drivers to "tarp" large loads of cargo—that is, to secure items to a flatbed truck by covering them with a tarpaulin. *See generally* 49 C.F.R. § 393.106(b) ("Cargo must be firmly immobilized or secured on or within a vehicle by structures of adequate strength, . . . tiedowns or a combination of these."). Mr. Waltman's forty-year tenure in the trucking industry gave him some familiarity with this practice; indeed, he had been trained to tarp and deemed tarping "part of what [drivers] are supposed to know." Aplt. App. at 137 (Waltman Dep., dated May 17, 2010). His personal tarping technique involved the use of a ladder to mount cargo loads. Due to the attendant danger of falling, Mr. Waltman took care to crawl (rather than walk) across loads, avoiding the perimeter.

On May 5, 2006, Mr. Waltman reported to G-P's gypsum-manufacturing facility in Lovell, Wyoming, to retrieve a load of wallboard. From previous experience with G-P, he knew that the company required all drivers to tarp before leaving the premises. He was also aware that this particular facility furnished safety harnesses as fall protection for G-P employees working inside the plant, but not for any workers of its independent contractors.[2] However, Mr. Waltman was well-versed in tarping without that safeguard.

After checking in at the Lovell facility's main office, Mr. Waltman drove to the

---

[2]    Mr. Waltman contends that a request that he made of G-P "[y]ears ago" for fall protection fell on deaf ears. Aplt. App. at 133. However, despite his insistence that tarping is precarious, he has not suggested that a company's tarping protocol typically influenced his decision on whether to accept a job.

3

loading area (an adjacent dirt parking lot), where he received wallboard from a forklift operator. Mr. Waltman then moved his truck from the loading area so that he could begin tarping. He climbed atop the load by ladder, pursuant to his custom, but he fell during the process and was subsequently discovered in the cab of his truck.[3] As a result of his fall, Mr. Waltman sustained injuries—multiple fractures and a head lesion—for which he was hospitalized.

**B**

On December 15, 2009, Mr. Waltman and RWT filed a lawsuit in the United States District Court for the District of Wyoming; each separately advanced one "claim for relief" sounding in "negligence."[4] Dist. Ct. Doc. 1, at 7–8 (Compl., filed Dec. 15, 2009) (capitalization altered). Mr. Waltman's "claim" embodied two strands of reasoning that allegedly justified holding G-P liable in negligence. Specifically, Mr. Waltman alleged (1) that G-P failed to provide a safe working environment for the workers of its independent contractors, and (2) that one of G-P's employees aggravated Mr. Waltman's fall-related injuries by placing him in the cab of his truck instead of summoning medical

---

[3] Mr. Waltman's recollection of several aspects of the accident—most notably, his fall and the manner in which he returned (or was returned) to his truck—is sketchy at best. For instance, he alleges that before falling he saw a "flash of yellow, like the color of a forklift which may have bumped the trailer and knocked [him] off," Aplt. App. at 144, but he has not sufficiently developed this assertion. In any event, because post-fall details pertain to merits issues we do not address here, we need not conduct a more searching factual inquiry.

[4] Pursuant to the parties' stipulation, the district court dismissed RWT and its claims without prejudice on July 15, 2010.

4

assistance. Mr. Waltman amended his complaint on January 7, 2010.

G-P subsequently moved for summary judgment and suggested that the district court "split Waltman's negligence claim into two distinguishable parts" for "purposes of argument." Aplt. App. at 54 (Def.'s Mot. for Summ. J., filed Aug. 27, 2010). G-P wanted the court to effectively bifurcate what it apparently viewed as a unitary negligence claim into a "negligence claim" and an "exacerbation claim." *See id.* at 54–55. Arguing for summary judgment under its proposed analytical rubric, G-P first denied a duty of care to any workers of its independent contractors—a class of persons to which Mr. Waltman indisputably belonged—in order to defeat Mr. Waltman's supposedly distinct negligence claim.[5] In making its second argument, G-P urged that "Plaintiff's *exacerbation claim* [was] unsustainable" because Mr. Waltman's account of post-fall events was too speculative. *Id.* at 67 (capitalization altered) (emphasis added). The district court took the fateful step of endorsing G-P's analytical approach, accepting the notion that Mr. Waltman's lawsuit consisted of two claims.

On October 14, 2010, the district court issued an order granting G-P's motion for summary judgment in part and denying it in part. The court first determined that G-P

---

[5]       We use the term "claim" here in discussing the purported negligence and exacerbation issues to explicate and underscore the logic and assumptions of G-P's arguments—not because we actually believe that these two issues comprise two distinct, stand-alone claims. Indeed, as discussed *infra*, our ultimate conclusion is that Mr. Waltman's allegations of injury exacerbation *do not* constitute a freestanding legal "claim"; instead, they are part and parcel of Mr. Waltman's one claim sounding in negligence.

owed no duty to supply Mr. Waltman fall protection, as G-P had not exercised control over Mr. Waltman's work or assumed any safety duties as to him. Thus, based upon its finding of no duty, the district court concluded that "G-P [was] entitled to judgment as a matter of law on Mr. Waltman's claim that G-P was negligent by failing to provide fall protection." *Id.* at 636 (Order Granting in Part & Den. in Part Def.'s Mot. for Summ. J., filed Oct. 14, 2010). Next, the court addressed the extent to which G-P might be responsible for any exacerbation of Mr. Waltman's injuries. It determined that G-P was *not* entitled to summary judgment on the purported exacerbation claim, reasoning that:

> there is no direct evidence at all, and nobody knows with certainty what happened [after the fall]. It appears that both parties' theories [on the exacerbation claim] are plausible. . . . In short, . . . there is a genuine issue of material fact about how Mr. Waltman ended up in the sleeper of his truck. That conflict is for a jury to resolve.

*Id.* at 638–39.

On June 2, 2011, in anticipation of an appeal regarding the district court's ruling on the purported negligence claim, the parties filed a stipulation for dismissal of the supposedly distinct claim for exacerbation *without* prejudice, stating their shared view "that a just, speedy, and inexpensive determination of this action [would] be best served by having all of Plaintiff's claims tried . . . together, because of the overlapping factual and evidentiary matters and issues involved." *Id.* at 645 (Stip. for Dismissal, filed June 2, 2011). The district court granted this stipulation on June 7, 2011, but noted nonetheless that:

6

if the District Court's October 14, 2010 Order granting summary judgment is vacated, reversed, or otherwise held without effect on appeal and the Plaintiff's claim is remanded to the District Court for trial, the Plaintiff will be allowed thirty days . . . to file a motion to amend the pleadings to re-allege the dismissed exacerbation claim against the Defendant to be tried together with the remanded claim. Pursuant to the Stipulation, Plaintiff's motion to amend to add the exacerbation claim back in the case, if timely filed, will be unopposed by the Defendant. . . .

[Assuming a motion to amend is timely,] the Defendant will not raise, argue or allege . . . that the Plaintiff is barred, estopped, or otherwise precluded from bringing the exacerbation claim by reason of its dismissal under the Parties' Stipulation.

*Id.* at 649–50 (Order Granting Stip., filed June 7, 2011).

The district court entered judgment regarding the stipulation for dismissal of the purported exacerbation claim on June 14, 2011. In so doing, the court stated, "Georgia-Pacific was not negligent . . . . Therefore, the exacerbation claim was the only matter in this case left pending. That claim was dismissed by the Court *without* prejudice . . . on June 7, 2011." *Id.* at 652 (J., filed June 14, 2011) (emphasis added).

Mr. Waltman timely appealed from the June 14, 2011, judgment. However, even at that early stage in the litigation, we questioned the propriety of exercising jurisdiction over this case. We observed, "It appears from a review of the district court pleadings that this court may lack appellate jurisdiction because no appealable order was entered . . . . The plaintiff dismissed the exacerbation of injuries claim without prejudice. Accordingly, the judgment entered by the district court may not be final for purposes of appeal." Order, No. 11-8048, at 1 (10th Cir., filed Mar. 12, 2012). For that reason, we

7

tolled Mr. Waltman's appeal and instructed him to submit a district court order within thirty days either (1) dismissing the exacerbation claim *with* prejudice, or (2) certifying the matter under Federal Rule of Civil Procedure 54(b).

Pursuant to our order, on March 21, 2012, Mr. Waltman filed an *unopposed* motion in the district court seeking a Rule 54(b) certification. In support of this request, he argued for the first time that it was "clear that the two claims [were] separate," which signaled that the circuit court would "not be called upon . . . twice to decide the same issues." Dist. Ct. Doc. 130, at 5 (Unopposed Mot. for R. 54(b) Certification, filed Mar. 21, 2012). He further reasoned that the questions driving each claim were distinguishable: the negligence claim presented the core issues of his "status . . . as an independent contractor and what duties, if any, an owner owes to such an individual," whereas the exacerbation claim "involved . . . who found the injured plaintiff and how [he got] from the place he fell from his truck into the cab of that truck." *Id.*

The district court denied Mr. Waltman's certification request on March 29, 2012. It expressly disagreed with Mr. Waltman's view that the lawsuit involved separate, distinct claims, explaining that:

> [t]his exacerbation claim relies on many of the same facts and issues and is really a part of Plaintiff's claim for negligence. . . . Moreover, the parties *previously argued the claims were not separate and distinct* when they filed the Stipulation for Dismissal of Plaintiff's Exacerbation Claim Without Prejudice . . . . In that Order, the parties argued the claims had overlapping factual and evidentiary matters and issues involved . . . . Although Plaintiff's exacerbation claim is technically different from the [negligence] claim, *there is significant factual overlap* and Plaintiff seeks the same damages for each claim.

8

Dist. Ct. Doc. 131, at 6–7 (Order Den. Mot. for R. 54(b) Certification, filed Mar. 29, 2012) (emphases added) (citations omitted) (internal quotation marks omitted).  In light of its conclusion that the negligence and exacerbation claims were *not* separate and distinct, the court deemed it unnecessary to conduct the remainder of a typical Rule 54(b) analysis, which contemplates the presence of multiple claims.

After Mr. Waltman's unsuccessful attempt to obtain a Rule 54(b) certification, our clerk's office directed him to show cause why his appeal should not be dismissed for lack of jurisdiction.  The clerk's order invoked this court's "general rule . . . that a party cannot obtain appellate jurisdiction where the district court has dismissed at least one claim without prejudice because the case has not been fully disposed of in the lower court." *Jackson v. Volvo Trucks N. Am., Inc.*, 462 F.3d 1234, 1238 (10th Cir. 2006); *accord* Order, No. 11-8048, at 1 (10th Cir., filed Mar. 30, 2012).  In response, Mr. Waltman asked that his appeal "be dismissed without prejudice for lack of jurisdiction because the District Court denied [his] Unopposed Motion for Rule 54(b) Certification."  Resp. to Order, No. 11-8048, at 1 (10th Cir., filed Apr. 20, 2012).  We construed his request as a voluntary motion to dismiss and, so construed, dismissed the appeal pursuant to Federal Rule of Appellate Procedure 42(b) on April 25, 2012.  We further observed that Mr. Waltman would not be precluded from timely appealing from a *proper* entry of final judgment by the district court.

G-P then sought to conclude the matter on May 1, 2012, by moving for summary judgment on what it perceived to be the remaining "claim" before the district court—the

9

purported exacerbation claim. Citing its prior without-prejudice dismissal of the alleged exacerbation claim, and the parties' failure to move to alter or amend that judgment, the district court determined that there were *no* pending claims; consequently, it denied G-P's summary-judgment motion as moot.

In apparent response, on May 23, 2012, Mr. Waltman filed a "Motion to Reopen Case and for Leave to File Amended Complaint" in order to reallege the purported exacerbation claim. The district court denied this motion as well, stating that Mr. Waltman had provided no authority that would permit reopening of his case. "It is clear the parties did not anticipate these precise circumstances when they entered the Stipulation for Dismissal," the court observed; "[h]owever, the Court is limited in its ability to reopen a case after it previously dismissed all the claims and entered a judgment in favor of Defendant." Dist. Ct. Doc. 139, at 3 (Order Den. Mot. to Reopen Case, filed June 13, 2012).

In denying Mr. Waltman's motion to reopen the case, the district court relied heavily upon the text of its June 2011 order granting the parties' stipulation for dismissal—namely, the excerpt indicating that Mr. Waltman could seek leave to replead his exacerbation claim *if* the grant of partial summary judgment to G-P were "vacated, reversed, or otherwise held without effect on appeal." *Id.* (internal quotation marks omitted); *see also* Aplt. App. at 645. The court interpreted our dismissal of Mr. Waltman's first appeal to mean we "*did not* vacate, reverse, or otherwise determine that the [summary-judgment order was] without effect." Dist. Ct. Doc. 139, at 3 (emphasis

10

added).  Moreover, it reasoned, the dismissal order only permitted amendment of an

*existing complaint*.  In other words, the order did not authorize the district court to *reopen*

Mr. Waltman's case so that he could file another complaint containing an exacerbation

claim.  Stressing its view that there was no longer a complaint pending before it, and that

"to revive [the] exacerbation claim, the Court [would need] to amend its order dismissing

the exacerbation claim without prejudice and amend the judgment in favor of

Defendants," the district court declined to amend the June 2011 order.  *Id.* at 4

(capitalization altered).  The court noted the absence of a motion filed pursuant to Federal

Rule of Civil Procedure 59 (as is relevant here, a motion under subsection (e) to alter or

amend a judgment) or 60 (a motion for relief from a judgment)—and it did not view Mr.

Waltman's motion to reopen the case as one brought under either procedural rule.

Shortly thereafter, Mr. Waltman filed a motion seeking either (1) reconsideration

of the June 2012 order declining his request to reopen the case, or (2) relief from

judgment under Rule 60(b)(4) or 60(b)(6).[6]  He invoked the portion of Rule 54(b) which

provides that any order "that adjudicates fewer than all the claims . . . does not end the

---

[6]     By its terms, Rule 60(b) contemplates the existence of a "final" judgment, order, or other district court proceeding.  *See* Fed. R. Civ. P. 60(b); *Raytheon Constructors, Inc. v. ASARCO Inc.*, 368 F.3d 1214, 1217 (10th Cir. 2003).  Rule 60(b)(4) permits a district court to "relieve a party . . . from a final judgment" on the ground that "the judgment is void."  Fed. R. Civ. P. 60(b)(4).  And, under Rule 60(b)(6), any such "final" proceeding may be vacated for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  Relief under Rule 60(b)(6) "is extraordinary and may only be granted in exceptional circumstances."  *LaFleur v. Teen Help*, 342 F.3d 1145, 1153 (10th Cir. 2003) (quoting *Amoco Oil Co. v. U.S. EPA*, 231 F.3d 694, 697 (10th Cir. 2000)) (internal quotation marks omitted).

11

action . . . and may be revised at any time before the entry of a judgment adjudicating all the claims." Dist. Ct. Doc. 140, at 1 (Mot. for Recons. or Relief from J., filed June 27, 2012) (quoting Fed. R. Civ. P. 54(b)) (internal quotation marks omitted). According to Mr. Waltman, the October 2010 summary-judgment order "adjudicated fewer than all the claims [and thus] did not and could not end the action"; moreover, the "June 14, 2011 Judgment, which purported to enter 'final judgment' . . . could not be a judgment adjudicating all the claims," which rendered that judgment facially void. *Id.* at 1–2. Mr. Waltman thus concluded that there had been no legally cognizable entry of final judgment in his case. And, he urged, the corollary conclusions were that the June 2011 ruling should be construed only "as an administrative closure, subject to reopening," and that "under Rule 54(b) [his] Complaint [was] still pending" in the district court. *Id.* at 2. To the extent the court rejected the foregoing arguments, Mr. Waltman suggested that basic equitable considerations justified relief under Rule 60(b)(6).

G-P attacked Mr. Waltman's motion on several grounds, one of which was that Rule 54(b) did not authorize the district court to reverse its voluntary dismissal[7] of the purported exacerbation claim. Calling Mr. Waltman's reliance on Rule 54(b) "misplaced," G-P argued, "Plaintiff voluntarily dismissed his remaining exacerbation

---

[7]    In a footnote, G-P disputed Mr. Waltman's view that the case should be deemed administratively closed. *See* Dist. Ct. Doc. 141, at 2 n.1 (Resp. to Mot. for Recons., filed July 5, 2012) ("[This argument is] inapposite as this case was not administratively closed. Plaintiff voluntarily dismissed his remaining claim."). We agree. Indeed, the district court never designated any order or judgment here as an administrative closure.

12

claim, causing the Court to enter judgment, thus adjudicating *all* of the claims before the Court. Plaintiff is not permitted to *amend* or take back his motion to dismiss and subsequent order of dismissal. Plaintiff's right is to bring a new complaint." Dist. Ct. Doc. 141, at 2. G-P also contended that the June 14, 2011, judgment was not void within this circuit's interpretation of Rule 60(b)(4) because the district court had subject-matter jurisdiction and did not deprive Mr. Waltman of due process.[8] Nor, in G-P's view, was Rule 60(b)(6) the appropriate vehicle to revive the purported exacerbation claim when Mr. Waltman had *asked* to have that claim dismissed. G-P insisted that Mr. Waltman's two options for relief were (1) to file a new complaint containing the purported exacerbation claim, or (2) to "file a notice with the [district court] dismissing his exacerbation claim with prejudice, which would then allow Plaintiff to pursue his appeal on the duty issue." *Id.* at 5.

On July 20, 2012, the district court denied Mr. Waltman's motion for reconsideration or relief from judgment, noting, "This is Plaintiff['s] second attempt to reopen a case in which all the claims have been dismissed. . . . Plaintiff may not simply reinstate claims [he] previously voluntarily dismissed because there are no claims pending before the Court." Dist Ct. Doc. 142, at 1 (Order Den. Mot. for Recons., filed

---

[8] "A judgment is void for Rule 60(b)(4) purposes if the rendering court was powerless to enter it," *Gschwind v. Cessna Aircraft Co.*, 232 F.3d 1342, 1346 (10th Cir. 2000) (internal quotation marks omitted)—whether for "lack of subject matter jurisdiction or jurisdiction over the parties," or due to "a plain usurpation of power or if the court has acted in a manner inconsistent with due process of law," *V.T.A., Inc. v. Airco, Inc.*, 597 F.2d 220, 224–25 (10th Cir. 1979) (footnote omitted).

13

July 20, 2012). One reason it cited was its view that the "issues" supposedly still pending merely represented an "attempt[ ] to manufacture finality" for appellate jurisdiction. *Id.* at 4. In rejecting Mr. Waltman's interpretation of Rule 54(b), the district court relied upon *Cook v. Rocky Mountain Bank Note Co.*, where we adopted the rule that "when a plaintiff voluntarily requests dismissal of [his] remaining claims without prejudice in order to appeal from an order that dismisses another claim with prejudice, . . . the order is not 'final' for purposes of § 1291." 974 F.2d 147, 148 (10th Cir. 1992).

The court then explained that Mr. Waltman was entitled to bring his exacerbation claim in a new complaint or to request a *with*-prejudice dismissal of that claim. Finally, the court indicated that it was "questionable whether [it] would have jurisdiction to reinstate the claims under Rule 60(b)." Dist. Ct. Doc. 142, at 11. In any event, the court indicated that it did not believe any exceptional circumstances justified reinstating the exacerbation claim in equity under Rule 60(b)(6).

Not to be deterred, the parties attempted to set the stage for an appeal once more by filing a stipulated motion for Rule 54(b) certification on October 5, 2012. While stating Mr. Waltman's "desire[] to have the exacerbation claim dismissed *with* prejudice," they argued that this was "not a viable option" in spite of the district court's clear indication in its most recent order that it was. Aplt. App. at 657 (Stip. Mot. for R. 54(b) Certification, filed Oct. 5, 2012) (emphasis added). The parties then opined that Mr. Waltman's remaining option—filing a new lawsuit—was unfeasible. Collectively, they argued that "a Rule 54(b) Certification [was] appropriate because the exacerbation claim

14

[was] time barred and Defendant would assert the statute of limitations as a defense if the claim was refiled. Plaintiff is effectively prevented from refiling the claim in federal court." *Id.* at 659.

On October 22, 2012, the district court granted the parties' stipulation for Rule 54(b) certification. The district court's certification order was unusual in several respects. Notably, it represented an abrupt shift in the court's view of the case—with little explanation beyond "[i]n light of the parties' new arguments, the Court concludes Rule 54(b) certification is appropriate in this case." *Id.* at 661 (Order Granting Stip. Mot. for R. 54(b) Certification, filed Oct. 22, 2012). The district court detailed its prior position that "finality was lacking for purposes of appeal," but stated that "the above test for determining finality does not apply in every circumstance." *Id.* at 664. Evidently accepting the parties' new position that Mr. Waltman was *effectively* barred from filing another complaint that included the purported exacerbation claim, and citing our prior holdings in *Amazon, Inc. v. Dirt Camp, Inc.*, 273 F.3d 1271, 1275 (10th Cir. 2001), and *Jackson*, 462 F.3d at 1238, the court determined, "For all practical purposes, . . . this [exacerbation] claim is now final." Aplt. App. at 668.

The court concluded its ruling with a brief recognition of the specific findings required by Rule 54(b), noting:

> The Court's holding is specific to the facts of this case. *In most instances*, the Court will continue to evaluate Rule 54(b) certifications in light of the dual determination (1) that the order it is certifying is final, and (2) that there is no just reason to delay review. Furthermore, the Court cautions plaintiffs contemplating the voluntar[y] dismissal of

15

claims *without* prejudice for the purpose of expediting appeal.  In most cases, these dismissals will be viewed as lacking finality.

*Id.* at 668–69 (emphases added).  Then, the district court ruled that "this case [was] ripe for appellate consideration" and granted Rule 54(b) certification.  *Id.* at 669.

Mr. Waltman subsequently appealed from the district court's June 14, 2011, entry of judgment.

## II

"[B]ecause the circumstances of this case fairly raise jurisdictional concerns, and, as always, 'we have a duty to inquire into our own jurisdiction,'" we take up the threshold issue of jurisdiction *sua sponte*.  *City of Chanute v. Williams Natural Gas Co.*, 31 F.3d 1041, 1045 n.8 (10th Cir. 1994) (quoting *McGeorge v. Cont'l Airlines, Inc.*, 871 F.2d 952, 953 (10th Cir. 1989)); *see United States v. Torres*, 372 F.3d 1159, 1161 (10th Cir. 2004) (noting that, even in the absence of a jurisdictional challenge, "it is the duty of the federal court to determine the matter *sua sponte*" (quoting *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)) (internal quotation marks omitted)).  We do so irrespective of the parties' amenability to a merits ruling, for it is axiomatic that litigants may not stipulate to the existence of subject-matter jurisdiction.  *See United States v. McGaughy*, 670 F.3d 1149, 1155 (10th Cir. 2012) ("Subject matter jurisdiction cannot be conferred or waived by consent, estoppel, or failure to challenge jurisdiction early in the proceedings." (quoting *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995)) (internal quotation marks omitted)); *accord Nicodemus v. Union Pac. Corp.*, 440 F.3d

16

1227, 1231 n.1 (10th Cir. 2006). We are especially comfortable proceeding in this manner in light of the Supreme Court's disapproval of "assuming jurisdiction for the purpose of deciding the merits." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (internal quotation marks omitted); *see also id.* ("declin[ing] to endorse such an approach because it carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers").

Our ability "to review final decisions of the district courts" is conferred by 28 U.S.C. § 1291. *Constien v. United States*, 628 F.3d 1207, 1210 (10th Cir. 2010) (internal quotation marks omitted). "This jurisdiction is generally contingent upon 'the existence of a decision by the District Court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Miami Tribe of Okla. v. United States*, 656 F.3d 1129, 1137 (10th Cir. 2011) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978)). Known as the "final-judgment rule," this bedrock legal principle is designed to prevent "fragmentary and piecemeal review" of district court rulings, *Boughton v. Cotter Corp.*, 10 F.3d 746, 748 (10th Cir. 1993), and to "promote[] efficient judicial administration by 'reduc[ing] the ability of litigants to . . . clog the courts through a succession of costly and time-consuming appeals,'" *In re Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d 470, 482 (10th Cir. 2011) (second alteration in original) (quoting *Flanagan v. United States*, 465 U.S. 259, 264 (1984)); *accord Grosvenor v. Qwest Corp.*, 733 F.3d 990, 1000–01 (10th Cir. 2013).

As is relevant here, the district court's purported certification under Federal Rule

17

of Civil Procedure 54(b) implicates our jurisdiction. *See Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 321 F.3d 950, 955 n.1 (10th Cir. 2003) (tying the entry of a Rule 54(b) certification to the existence of appellate jurisdiction); *Lewis v. B.F. Goodrich Co.*, 850 F.2d 641, 645–46 (10th Cir. 1988) (en banc) (observing that failure to secure a proper Rule 54(b) certification may leave the case vulnerable to summary dismissal for lack of appellate jurisdiction). More specifically, although an order terminating fewer than all pending claims in a lawsuit is generally not considered "final" within the meaning of § 1291, *see Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 431–32 (1956), Rule 54(b) is a historically recognized exception to the final-judgment rule. This rule provides, in pertinent part, that:

> [w]hen an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties.

Fed. R. Civ. P. 54(b).

We have explained that "[t]he purpose of Rule 54(b) is to avoid the possible injustice of a delay in entering judgment on *a distinctly separate claim* or as to fewer than all of the parties until the final adjudication of the entire case by making an immediate appeal available." *Okla. Tpk. Auth. v. Bruner*, 259 F.3d 1236, 1241 (10th Cir. 2001) (emphasis added) (internal quotation marks omitted). With this justification in mind, we

18

have also stated that Rule 54(b) "may be invoked only in a relatively select group of cases and applied to an even more limited category of decisions." *Weinman v. Fid. Capital Appreciation Fund (In re Integra Realty Res., Inc.)*, 262 F.3d 1089, 1107 (10th Cir. 2001) (internal quotation marks omitted).

Focusing on the standard of review, in *Bruner*, we stated:

> A two-tiered standard of review is applied to a district court's Rule 54(b) certification. The district court's determination of the certified order's finality is subject to *de novo* review because it is a question of law. However, the district court's determination that there is no just reason for delay is reviewed only for abuse of discretion.

259 F.3d at 1242 (citations omitted); *accord Niemi v. Lasshofer*, 770 F.3d 1331, 1341 (10th Cir. 2014); *see also Lusk v. Ryder Integrated Logistics*, 238 F.3d 1237, 1239 n.1 (10th Cir. 2001) (where finality of the adjudicated claim was undisputed, noting that "the exercise of appellate jurisdiction is proper if the court of appeals is satisfied that the district court did not abuse its discretion in certifying the appeal").

The authorities discussing this rule have clarified that substance prevails over form; that is, labeling an order a "Rule 54(b) certification" has no operative legal effect. *See, e.g.*, *Wheeler Mach. Co. v. Mountain States Mineral Enters., Inc.*, 696 F.2d 787, 789 (10th Cir. 1983) (concluding that, where the order in question was "not a final order," "the district court could not make it final by certifying it as such under Rule 54(b)"); 15A Charles Alan Wright et al., *Federal Practice and Procedure: Jurisdiction 2d* § 3914.7, at 541 (1992) ("Entry of judgment under Rule 54(b) . . . does not conclusively establish appealability."). As the Supreme Court has cautioned, "[n]ot all final judgments on

19

individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims."  *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980); *cf. Transp. Workers Union of Am., Local 100 v. N.Y.C. Transit Auth.*, 505 F.3d 226, 230 (2d Cir. 2007) (concluding that "[a] district court's grant of Rule 54(b) certification does not automatically require . . . review [of] the merits of the appeal").  This court has likewise indicated that "[a] jurisdictional defect cannot be cured by means of a [R]ule 54(b) certification."  *McKinney v. Gannett Co.*, 694 F.2d 1240, 1247 (10th Cir. 1982).

A Rule 54(b) certification is deemed to provide the proper foundation for an appeal when it contains three[9] key features.  *See* 10 Charles Alan Wright et al., *Federal Practice and Procedure* § 2656, at 48 (3d ed. 1998) ("The rule itself sets forth three basic conditions on its applicability.").  First, the order must stem from a lawsuit that involves multiple claims.  *See Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 743 (1976) (noting that the rule "is limited *expressly* to multiple claims actions" (emphasis added) (quoting

---

[9]  We have also described Rule 54(b) as having *two* requirements.  *See Stockman's Water Co. v. Vaca Partners, L.P.*, 425 F.3d 1263, 1265 (10th Cir. 2005) (requiring the district court to determine (1) "that its judgment is final," and then (2) "that no just reason for delay of entry of its judgment exists"); *Bruner*, 259 F.3d at 1242 (insisting that district courts conform "strictly to the rule's requirement [of] . . . two express determinations").  However, given the dilemma this appeal presents—i.e., that the litigants and the district court elided the "multiple-claims" issue—we find it preferable to use a linguistic formulation of Rule 54(b) that explicitly recognizes the multiple-claims condition through the articulation of three requirements, as we did in *Jordan v. Pugh*, 425 F.3d 820, 826 (10th Cir. 2005) ("Rule 54(b) establishes three prerequisites for appeal of a separate final judgment on fewer than all claims in a lawsuit.").  Our decision in this regard has no substantive effect on the controlling standard.

*Mackey*, 351 U.S. at 435) (internal quotation marks omitted)); *Jordan*, 425 F.3d at 826 ("[A]n order must be final in the sense that it is an ultimate disposition of an individual claim entered in the course of a multiple claims action." (quoting *Curtiss-Wright Corp.*, 446 U.S. at 7) (internal quotation marks omitted)).

Second, the order must represent a final decision on at least one of the claims. *See Jordan*, 425 F.3d at 826; *cf. Miami Tribe of Okla.*, 656 F.3d at 1139 ("[U]nder § 1291, a 'remand by a district court to an administrative agency for further proceedings is ordinarily not appealable because it is not a final decision.'" (quoting *Bender v. Clark*, 774 F.2d 1424, 1426–27 (10th Cir. 1984))). And, third, the order must include the district court's express determination "that there is no just reason for delay." Fed. R. Civ. P. 54(b); *see Elm Ridge Exploration Co. v. Engle*, 721 F.3d 1199, 1209 n.5 (10th Cir. 2013); *see also* Marianne Fogarty, Note, *The Finality of Partial Orders in Consolidated Cases Under Rule 54(b)*, 57 Fordham L. Rev. 637, 648 n.78 (1989) ("In effect, the district court must expressly state that a particular order is final and spell out the reasons why an appeal is permissible immediately, and need not await the resolution of all pending issues.").

With respect to the third requirement, in heeding the text of the rule, we have stated (as relevant here) that Rule 54(b) certification "is *only* appropriate when a district court adheres strictly to the rule's requirement" of making this express determination. *Bruner*, 259 F.3d at 1242 (emphasis added); *accord Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1278 (10th Cir. 2013). Moreover, while we have conceded that "once parties have expended the effort of briefing and argument on appeal, it may appear wasteful and

21

inefficient for the appellate court to decline to rule," we have nonetheless maintained that "in the long run it will be less wasteful and more efficient for district and appellate courts to adhere to the rule that only separate and distinct claims can be isolated for appeal under Rule 54(b)." *Jordan*, 425 F.3d at 829.

## III

Because Mr. Waltman stakes his right to appeal on Rule 54(b), we turn now to whether the district court's purported certification satisfies the requirements of that rule. We ultimately conclude that it does not; accordingly, we lack subject-matter jurisdiction over Mr. Waltman's appeal. For two independent reasons, we conclude that the certification is fatally deficient.

First, the court's certification did not have the effect of resolving with finality one claim in a multiple-claims action because the purported exacerbation claim was actually part and parcel of Mr. Waltman's one claim sounding in negligence, and was not actually a freestanding, discrete claim. Therefore, the court's Rule 54(b) certification rested on a false premise—i.e., the existence of two discrete claims, one for negligence and the other for exacerbation—and was ineffective to render the court's summary-judgment ruling on the purported negligence claim final.

Second, even if this were not so, the certification would be fatally flawed because the district court never made therein an express determination that there was no just reason for delay (i.e., the court failed to satisfy Rule 54(b)'s express-determination requirement). For these two reasons, the district court's Rule 54(b) certification does not

22

provide us with a jurisdictional basis for reviewing Mr. Waltman's appeal.

## A

The first reason that we have concluded that the district court's Rule 54(b) certification was ineffective to confer subject-matter jurisdiction upon us is because it rested on a false premise: that Mr. Waltman's lawsuit involved two claims—and accordingly was the multiple-claims action that Rule 54(b) contemplates—and that the certification thus had the effect of rendering final the court's prior partial summary-judgment ruling on the purported negligence claim.

There is no doubt that a Rule 54(b) certification order "must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Curtiss-Wright Corp.*, 446 U.S. at 7 (quoting *Mackey*, 351 U.S. at 436). A "claim," for purposes of Rule 54(b), "comprises 'all factually or legally connected elements of a case.'" *Jordan*, 425 F.3d at 827 (quoting *Bruner*, 259 F.3d at 1242); *accord Planned Parenthood Sw. Ohio Region v. DeWine*, 696 F.3d 490, 500–01 (6th Cir. 2012). Instead of announcing a "bright-line" test for discerning the existence of multiple claims in this context, the Supreme Court has alluded generally to the concept of "separate, distinct, and independent" claims. *Curtiss-Wright Corp.*, 446 U.S. at 6; *see Jordan*, 425 F.3d at 827 (distinguishing "multiple claims, which may be appealed separately, from multiple legal grounds in a single claim, which may not"). Nevertheless, the Court has for some time "recognize[d] that a complaint asserting only one legal right, even if seeking multiple remedies for the alleged violation of that right, states a single claim for

23

relief." *Liberty Mut. Ins. Co.*, 424 U.S. at 743 n.4.  The Court has likewise made clear that a district court "cannot, in the exercise of its discretion, treat as 'final' that which is not 'final' within the meaning of [section] 1291."  *Mackey*, 351 U.S. at 437; *accord Armijo v. Atchison, Topeka & Santa Fe Ry. Co.*, 19 F.3d 547, 552 (10th Cir. 1994).  We review de novo a district court's determination that an action presents more than one claim for relief for purposes of invoking Rule 54(b) "because it is a question of law." *Bruner*, 259 F.3d at 1242.

**1**

In Mr. Waltman's lawsuit, the controlling jurisdictional question is whether his exacerbation claim is "distinct and separable from" his negligence claim.  *Old Republic Ins. Co. v. Durango Air Serv., Inc.*, 283 F.3d 1222, 1225 (10th Cir. 2002) (quoting *Bruner*, 259 F.3d at 1241) (internal quotation marks omitted); *accord Niemi*, 770 F.3d at 1341–42.  Our inquiry in this regard "is based largely on practical concerns."  *Jordan*, 425 F.3d at 827; *cf. Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 118 F.3d 1157, 1162 (7th Cir. 1997) (asking whether a subsequent appeal would oblige the court of appeals to revisit "ground [already] covered in the first appeal"); *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 580 (1st Cir. 1994) (observing that courts of appeals must "trac[e] the interrelationship between, on one hand, the legal and factual basis of the claims undergirding the proposed judgment (*i.e.*, the jettisoned claims), and on the other hand, the legal and factual basis of the claims remaining in the case").  More to the point, we ask whether identical factual questions and common legal issues give rise to the

24

purportedly discrete claims and "whether separate recovery is possible." *Jordan*, 425

F.3d at 827; *see Bruner*, 259 F.3d at 1242 (discussing the "notion of connectedness" and

courts' focus on "(1) the factual overlap (or lack thereof) between the claims disposed of

and the remaining claims, and (2) whether the claims disposed of and the remaining

claims seek separate relief" (internal quotation marks omitted)); *Gas-A-Car, Inc. v. Am.*

*Petrofina, Inc.*, 484 F.2d 1102, 1104 (10th Cir. 1973) (considering whether "both counts

of the complaint stem from the same aggregate of operative facts").[10]

---

[10]     Our understanding of the concept of "claim," for purposes of Rule 54(b), is
in harmony with that of several of our sister circuits. *See Lloyd Noland Found., Inc. v.*
*Tenet Health Care Corp.*, 483 F.3d 773, 780 (11th Cir. 2007) ("Although this court has
noted that the line between deciding one of several claims and deciding only part of a
single claim is very obscure, we have held that when the plaintiff presents more than one
legal theory, but will be permitted to recover on only one of them[,] . . . there is only a
single inseparable claim for relief.  Thus, the touchstone for determining whether an
entire claim has been adjudicated for the purposes of Rule 54(b) is whether that claim is
separately enforceable without mutually exclu[ding] or substantially overlap[ping] with
remedies being sought by the remaining claims pending in the district court." (alterations
and omission in original) (citations omitted) (internal quotation marks omitted)); *Lowery*
*v. Fed. Express Corp.*, 426 F.3d 817, 821 (6th Cir. 2005) (noting that, "[e]ven though
different theories of liability may have been asserted, the concept of a claim under Rule
54(b) denotes the aggregate of operative facts which give rise to a right enforceable in the
courts" (alteration in original) (quoting *McIntyre v. First Nat'l Bank of Cincinnati*, 585
F.2d 190, 192 (6th Cir. 1978)) (internal quotation marks omitted)); *Gerardi v. Pelullo*, 16
F.3d 1363, 1370 (3d Cir. 1994) (asking whether relief sought for one claim is "subsumed
by" relief on the other claim); *Spiegel v. Trs. of Tufts Coll.*, 843 F.2d 38, 45 (1st Cir.
1988) (inquiring whether claims "ask the same brace of questions"); *Schexnaydre v.*
*Travelers Ins. Co.*, 527 F.2d 855, 856 (5th Cir. 1976) (noting that "[t]rue
multiplicity is not present where . . . the plaintiff merely presents alternative
theories, drawn from the law of the same sovereign, by which the same set of facts
might give rise to a single liability"); *Backus Plywood Corp. v. Commercial Decal,*
*Inc.*, 317 F.2d 339, 341 (2d Cir. 1963) (observing that a discrete claim is "the aggregate
of operative facts which give rise to a right enforceable in the courts" (quoting *Original*

(continued...)

25

In this diversity case, the substantive law of the forum state, Wyoming, would govern any merits-based analysis of Mr. Waltman's claims. *See Eureka Water Co. v. Nestle Waters N. Am., Inc.*, 690 F.3d 1139, 1145 (10th Cir. 2012). Wyoming law instructs that four core elements comprise a negligence claim:

> (1) [t]he defendant owed the plaintiff a duty to conform to a specified standard of care, (2) the defendant breached the duty of care, (3) the defendant's breach of the duty of care proximately caused injury to the plaintiff, and (4) the injury sustained by the plaintiff is compensable by money damages.

*Hatton v. Energy Elec. Co.*, 148 P.3d 8, 13 (Wyo. 2006) (quoting *Valance v. VI-Doug, Inc.*, 50 P.3d 697, 701 (Wyo. 2002)) (internal quotation marks omitted). The issue of duty must be addressed before proceeding to other aspects of the claim. *See Lucero v. Holbrook*, 288 P.3d 1228, 1232 (Wyo. 2012); *Hatton*, 148 P.3d at 13. "A duty may arise by contract, statute, common law, 'or when the relationship of the parties is such that the law imposes an obligation on the defendant to act reasonably for the protection of the plaintiff.'" *Killian v. Caza Drilling, Inc.*, 131 P.3d 975, 980 (Wyo. 2006) (quoting *Hamilton v. Natrona Cnty. Educ. Ass'n*, 901 P.2d 381, 384 (Wyo. 1995)).

One thing is clear from the face of Mr. Waltman's amended complaint: the averments comprising his two supposedly distinct "claims" unmistakably share and incorporate the element of duty—indeed, the same general duties of a landowner to an

_____

[10](...continued)
*Ballet Russe, Ltd. v. Ballet Theatre, Inc.*, 133 F.2d 187, 189 (2d Cir. 1943)) (internal quotation marks omitted)).

invitee.[11] Were we to conduct a merits-based inquiry, any conclusions that we might reach concerning G-P's liability for injuries caused by Mr. Waltman's fall would *depend* on our threshold duty-of-care determination. *See Lucero*, 288 P.3d at 1232 ("Duty and breach of duty *must* be established before addressing . . . responsibility for any harm suffered." (emphasis added)).

Count I, which articulates the theories of liability with respect to Mr. Waltman, sets forth the following allegations:

> 35. Georgia-Pacific owed a duty of care to oversee and control outside contractors such as Plaintiff Richard Waltman at its manufacturing facility in Lovell, Wyoming.
>
> 36. Georgia-Pacific breached its duty of care to Plaintiff Richard Waltman by failing to provide fall protection such as a safety harness and by failing to provide a loading area or docking station that would provide a place to safely secure his load.
>
> 37. Georgia-Pacific also owed a duty to Plaintiff Richard Waltman as the owner of the manufacturing facility in Lovell, Wyoming, where Mr. Waltman was working at the time of his fall.

---

[11] Under Wyoming law, Mr. Waltman's status as a driver for RWT, G-P's independent contractor, renders him G-P's invitee. *See Jones v. Chevron U.S.A., Inc.*, 718 P.2d 890, 894 (Wyo. 1986). The general duty owed by a landowner, such as G-P, to an invitee is to "maintain[ ] his property in a reasonably safe condition," *Berry v. Tessman*, 170 P.3d 1243, 1245 (Wyo. 2007) (quoting *Clarke v. Beckwith*, 858 P.2d 293, 296 (Wyo. 1993)) (internal quotation marks omitted), but a landowner "is not obligated to protect the employees of an independent contractor from hazards which are incidental to, or part of, the very work the contractor was hired to perform," *Jones*, 718 P.2d at 894. "Two limited exceptions to non-liability have been recognized in [Wyoming] decisions: (1) workplace owner/employer (owner) exercises [a] controlling and pervasive role over the independent contractor's work; or (2) owner assumes affirmative safety duties." *Franks v. Indep. Prod. Co.*, 96 P.3d 484, 490 (Wyo. 2004).

38. Georgia-Pacific breached the duty it owed to Plaintiff Richard Waltman as a Wyoming landowner by having a continuous and easily foreseeable dangerous condition on its property when it was reasonably foreseeable that a driver such as Mr. Waltman would fall as he was loading his truck.

39. Georgia-Pacific's breaches of its duties as set forth above proximately caused the injuries suffered by Plaintiff Richard Waltman when he fell as he was attempting to secure the load on his truck.

40. Upon information and belief, Georgia-Pacific *further* breached its obligations by willfully, wantonly, and recklessly drag[ging] Plaintiff, while he was unconscious, back into his truck.

41. The injuries sustained by Plaintiff Richard Waltman when he fell as he was attempting to secure the load on his truck *and* when he was dragged to the cab of his truck are *a direct and proximate result of the Defendant's negligence* and are compensable by money damages.

Aplt. App. at 23–24 (Am. Compl., filed Jan. 7, 2010) (emphases added).

As Mr. Waltman crafted his amended complaint, there was significant factual and legal overlap between the purported negligence and exacerbation claims. *See Bruner*, 259 F.3d at 1242–43; *Gas-A-Car, Inc.*, 484 F.2d at 1104. Indeed, in his briefing, Mr. Waltman revealed his belief that his injuries worsened—that is, were exacerbated—due to G-P's supposed breach of *the same duties* associated with his fall. *See* Aplt. App. at 24 (arguing that G-P "further breached" its obligations by "drag[ging] Plaintiff, while he was unconscious, back into his truck"); *id.* at 414 (Resp. to Mot. for Summ. J., filed Sept. 13, 2010) (indicating that G-P's "practice of ignoring the outside motor freight carriers while performing the required tarping" and its alleged noncompliance with federal safety standards—the same breaches of duty argued in the purported "negligence-claim" section

28

of his response brief—proximately caused the exacerbation of his injuries).  Moreover,

notably, Mr. Waltman did not seek separate damages—based on the two purported claims

(i.e, negligence and exacerbation)—for G-P's alleged breach of its duties.  *See Jordan*,

425 F.3d at 827; *Bruner*, 259 F.3d at 1242–43.

Thus, we would be hard-pressed to conclude, for purposes of assessing the

propriety of the district court's Rule 54(b) certification, that Mr. Waltman's purported

negligence and exacerbation claims are actually discrete claims.  Mr. Waltman's lawsuit

never was the multiple-claims action that Rule 54(b) contemplates.  Put another way, the

purported negligence and exacerbation "claims" are so "inextricably intertwined and

related," *Old Republic Ins. Co.*, 283 F.3d at 1225, that they are more accurately described

as "multiple legal grounds in a single claim," *Jordan*, 425 F.3d at 827; *accord NAACP v.

Am. Family Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992).  Consequently, Rule 54(b)

certification was never an appropriate procedural vehicle for Mr. Waltman to pursue.  *Cf.,

e.g.*, *Lottie v. W. Am. Ins. Co.*, 408 F.3d 935, 939 (7th Cir. 2005) ("Rule 54(b) is not

intended to provide an option to the district court to certify *issues* for interlocutory

appeal." (emphasis added)).

**a**

In reaching this conclusion (i.e., that Mr. Waltman's two "claims" are *not* bona

fide freestanding claims for relief), we find especially telling the evolving views of the

parties—and the district court—regarding the relationship between the two purported

claims.  Notably, when the parties requested a without-prejudice dismissal of the

29

exacerbation claim, they expressly agreed that "the overlapping factual and evidentiary matters and issues involved" justified such relief. Aplt. App. at 645. Their shared stance shifted some months later, while the first appeal was tolled as we awaited a Rule 54(b) certification order. As discussed *supra*, at this point the parties changed course and jointly considered it "clear that the two claims [were] separate." Dist. Ct. Doc. 130, at 5.

Moreover, the district court—which ended up considering the propriety of certifying the matter for appellate review under Rule 54(b) twice—also shifted its position on the relationship between the two purported claims without explanation. From our perspective, the district court's first determination was the correct one. In March 2012, the district court in no uncertain terms repudiated the notion that such a certification was available. It did so based upon a finding that "the Complaint allege[d] only one cause of action for negligence," and it concluded, "[T]he Court does not believe the claims are separate and distinct to justify Rule 54(b) certification." Dist. Ct. Doc. 131, at 6–7.

Yet, we struggle to reconcile the court's first Rule 54(b) ruling with its decision when it addressed the Rule 54(b) question the second time. In issuing its second Rule 54(b) ruling, the district court implicitly acknowledged the parties' earlier consensus on the factual and legal overlap between the two purported claims, as well as the court's acceptance of that premise in its first Rule 54(b) ruling. *Cf.* Aplt. App. at 661, 664 (vaguely indicating that the parties had raised "new arguments" for Rule 54(b) certification, whereas previously "*the parties themselves argued* [that] the claims were

30

not separate and distinct when they filed the Stipulation for Dismissal" of the exacerbation claim (emphasis added)).  But then, without pausing to explain how its views on the existence of multiple claims had changed, the court conclusorily stated that the factors it had previously analyzed "do[ ] not apply in every circumstance," *id.* at 664, and proceeded to certify its prior partial summary-judgment ruling as final under Rule 54(b).

This laconic approach is at odds with our precedent.  *See Bruner*, 259 F.3d at 1244 ("[G]iven that the district court's certification order reversed an earlier order in which it held that [another] Order *was not* final, we believe that the district court should not only have made an express determination of finality, but also explained what circumstances have intervened to cause it to believe that the [other] Order *was* now final."); *see also Old Republic Ins. Co.*, 283 F.3d at 1225 n.5 ("[A]s a matter of better practice (indeed, the most desirable practice) district courts, in their future considerations of Rule 54(b) certification requests, [should] clearly articulate their reasons and make careful statements based on the record supporting their determinations of 'finality' and 'no just reason for delay' so that we could review a 54(b) order more intelligently, and thus avoid jurisdictional remands.").

If there was in fact a valid and reasonable explanation for the district court's shift in position (which we cannot perceive), the court was obliged to place that explanation on the record.  This the court did not do.  The court's inexplicable endorsement of the parties' shift in position regarding the relationship between the two purportedly distinct

31

claims of Mr. Waltman's amended complaint certainly does not cast doubt on our independent conclusion that these claims are not actually distinct. If anything, the court's silence suggests that it had difficulty defending the logically indefensible position that Mr. Waltman's negligence and exacerbation claims were in fact distinct.

**b**

The district court's references to our decisions in *Amazon* and *Jackson* do not give us pause, much less alter our conclusion. These cases discuss the exception we have recognized to *Cook*'s general rule that a plaintiff's voluntary, *without*-prejudice dismissal of some claims in order to appeal from an order dismissing another claim *with* prejudice is not "final" under § 1291. *See Cook*, 974 F.2d at 148. This exception reflects our adherence to the Supreme Court's view that "the requirement of finality imposed by section 1291 is to be given a 'practical rather than a technical construction.'" *Sherman v. Am. Fed'n of Musicians*, 588 F.2d 1313, 1315 (10th Cir. 1978) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)). It asks the district court to determine whether the plaintiff has "been 'effectively excluded from federal court under the present circumstances.'" *Jackson*, 462 F.3d at 1238 (quoting *Amazon*, 273 F.3d at 1275). If the court deems that condition satisfied, then the dismissal without prejudice *can* create a basis for appellate jurisdiction.[12]

---

[12] Whether a plaintiff dismisses his claims *with* versus *without* prejudice is a tactical choice with distinct consequences concerning appellate jurisdiction over any remaining claims. It is clear that if a plaintiff seeks with-prejudice dismissal of some

(continued...)

Unfortunately for Mr. Waltman, neither *Amazon* nor *Jackson* lends him succor. In

particular, one critical fact distinguishes those cases from this one: in each, there were

unquestionably *multiple* claims, which Rule 54(b) contemplates. The question we

addressed in those cases was whether, practically speaking, the court's *without*-prejudice

---

[12](...continued)
claims, we have jurisdiction over his other claims that have been fully adjudicated on the
merits. This is so because he has definitively abandoned certain claims in order to
preserve others for appeal. *Compare Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253
(10th Cir. 1998) (in multiple-claims suit, finding appellate jurisdiction when the parties
had requested a *with*-prejudice dismissal of unadjudicated claims), *with Heimann v.
Snead*, 133 F.3d 767, 769 (10th Cir. 1998) (per curiam) ("Parties may not confer appellate
jurisdiction upon us by obtaining a voluntary dismissal *without* prejudice of some claims
so that others may be appealed." (emphasis added)).

Even if we were inclined to do so, we are not situated (nor was the district court) to
save Mr. Waltman from the harsh ramifications of his litigation strategy. Certain
commentators have suggested that our perspective is prudent, concluding that the practice
(akin to the efforts of Mr. Waltman here) of dismissing some claims *without* prejudice in
a multiple-claims action in the hopes of appealing the remaining claims that have been
adjudicated *with* prejudice—a practice called "manufacturing" finality—violates the
final-judgment rule. *See, e.g.*, Rebecca A. Cochran, *Gaining Appellate Review by
"Manufacturing" a Final Judgment Through Voluntary Dismissal of Peripheral Claims*,
48 Mercer L. Rev. 979, 1009 (1997) ("The distinction between dismissal with and
without prejudice is crucial. . . . Peripheral claims must be dismissed with prejudice to
preserve the final judgment rule."); *id.* at 1016 ("The appellate courts also contribute to
the finality problem, rather than curing it, because they fail to recognize the materiality of
dismissal labels and thus fail to direct the litigants how to dismiss those claims—with or
without prejudice—as if the designation were of no significance."); Joseph Struble,
Comment, *An Early Roll of the Dice: Appeal Under Conditional Finality in Federal
Court*, 50 Hous. L. Rev. 221, 223 (2012) ("Under the traditional analysis, if a plaintiff
chooses to dismiss its peripheral claims and immediately appeal, the dismissal of the
peripheral claims must be *with* prejudice to produce a final judgment for
appeal [because] . . . the peripheral claims are lost forever. . . . A majority of the courts of
appeals that have considered the issue have concluded that allowing a plaintiff to
manufacture finality by dismissing peripheral claims *without* prejudice violates the final
judgment rule." (emphases added) (footnotes omitted)).

dismissal of one or more claims had the effect of conclusively excluding the plaintiff from federal court on those claims, such that the action could be rendered final by a *with-*prejudice dismissal of the remainder of the claims. *See also Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1209 n.1 (10th Cir. 2000); *Jarvis v. Nobel/Sysco Food Servs. Co.*, 985 F.2d 1419, 1424–25 (10th Cir. 1993). Here, for the reasons we have explicated *supra*, the requisite multiple claims were not present. Therefore, from the outset, Rule 54(b)'s rubric was not applicable and the district court's Rule 54(b) certification could not provide a proper jurisdictional basis for this appeal.

The district court elided this distinction when it reasoned that, as in *Amazon* and *Jackson*, the claim that was dismissed here *without* prejudice (i.e., the purported exacerbation claim) was effectively excluded from federal court. Specifically, the court stated that the statute of limitations for the exacerbation claim ran on May 5, 2010, *see* Wyo. Stat. Ann. § 1-3-105(a)(iv)(C) (four-year limitations period for personal-injury claims), and that G-P would be able to assert a limitations defense in subsequent litigation, *see Spirit Lake Tribe v. North Dakota*, 262 F.3d 732, 738 (8th Cir. 2001) ("[M]ost statutes of limitations . . . are affirmative defenses."); *accord Rio Grande Silvery Minnow v. Bureau of Reclamation*, 599 F.3d 1165, 1176 (10th Cir. 2010). Next, the court observed that amending the pleadings would require the filing of a motion to amend or vacate the judgment pursuant to Rule 59(e) or 60, respectively. The court expressed doubt that either avenue could afford Mr. Waltman the relief he sought, noting that "an amended complaint would be untimely under Rule 59(e) and so similar to the original

34

complaint that Rule 60(b) would also fail to provide relief." Aplt. App. at 668. For these two reasons, the district court concluded, the judgment in question was "final."

Yet, irrespective of whether the cited authorities would have had the preclusive effect that the district court discerned, we find the court's reasoning unpersuasive because it is predicated on a false premise—the existence in Mr. Waltman's action of two discrete claims. For example, the fact that, hypothetically, Mr. Waltman's attempt to pursue a purportedly discrete exacerbation claim would be time-barred would not alter the basic truth that there was never such a discrete claim in the first instance. When the district court entered partial summary judgment, it only disposed of *a portion* of Mr. Waltman's *one* claim sounding in negligence, leaving the exacerbation portion untouched. Absent a multiple-claims action, Rule 54(b) is inapposite and a certification issued under that rule, as here, cannot provide the proper foundation for our appellate jurisdiction.

Similarly, the likely unavailability of post-judgment relief through motions (i.e., Rule 59(e) or 60(b)) to resurrect the purported exacerbation claim is of no moment because such an independent exacerbation claim is (and always has been) a fiction and the court's ruling did not comprehensively dispose of the one claim before it. In other words, exacerbation was merely a component of Mr. Waltman's one claim sounding in negligence. *Cf. Am. Family Mut. Ins. Co.*, 978 F.2d at 292 (opining, in a factually similar case, "Perhaps the judge was led astray by the structure of the complaint. Identifying legal theories may assist defendants and the court in seeing how the plaintiff hopes to prevail, but this organization does not track the idea of [a] claim for relief in the federal

35

rules.  Putting each legal theory in a separate count is a throwback to code pleading . . . .

One set of facts producing one injury creates one claim for relief . . . ." (citation omitted)

(internal quotation marks omitted)).  And, absent the multiple-claims action envisioned

by Rule 54(b), the district court's certification was ineffective in conferring appellate

jurisdiction on us.

In sum, the district court's invocation of *Amazon* and *Jackson* does not alter our

conclusion here.  At bottom, those cases are inapposite because they involved multiple-

claims lawsuits; this case does not.

**B**

The jurisdictional dismissal of this case is warranted, without more, because the

order that Mr. Waltman seeks to appeal is not final within the meaning of § 1291, and the

district court could not (and did not) render it final through the mechanism of Rule 54(b)

because Mr. Waltman's case did not involve multiple claims, as Rule 54(b) contemplates.

The implications of this holding for Mr. Waltman's ability to ever seek appellate relief

are possibly grim.[13]  Consequently, we feel impelled to note that, even if the district court

_____

[13]    Our caselaw, unfortunately, does not definitively speak to what avenues are available after this court's rejection of a defective Rule 54(b) certification.  The fact that numerous procedural vehicles have already been duly examined and rejected leaves us in grave doubt as to whether Mr. Waltman has any further recourse.  Notably, the district court's order denying the motion to reopen the case does not appear favorable to Mr. Waltman.  Nonetheless, given the wide latitude that must be afforded to the district court in matters of docket management, *see Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011); *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 985 (10th Cir. 2002), we can neither prescribe nor predict the future of Mr. Waltman's exacerbation

(continued...)

had correctly invoked the rubric of Rule 54(b) because Mr. Waltman's action actually involved multiple claims, we would nevertheless conclude that we do not have jurisdiction over this appeal because the district court did not—as Rule 54(b) requires—expressly determine that there was no just reason for delay.[14]

Recall that Rule 54(b) provides, *inter alia*, that a district court "may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court *expressly* determines that there is no just reason for delay." Fed. R. Civ. P. 54(b) (emphasis added); *accord Schrock*, 727 F.3d at 1278. "We have adhered to this formal

_____

[13](...continued)

arguments against G-P. The decision to grant post-judgment relief, such as an order on a motion filed pursuant to Federal Rule of Civil Procedure 59(e) or 60, "is committed to the sound discretion of the district court." *FTC v. Chapman*, 714 F.3d 1211, 1219 (10th Cir. 2013) (quoting *Brumark Corp v. Samson Res. Corp.*, 57 F.3d 941, 944 (10th Cir. 1995)) (internal quotation marks omitted). Thus, in any subsequent litigation seeking such redress, it will fall to the district court to determine whether "the party filing the [relevant] motion has [an] adequate explanation for the delay." *Cohen v. Longshore*, 621 F.3d 1311, 1313 (10th Cir. 2010) (quoting *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006)) (internal quotation marks omitted). Perhaps the district court will discern some basis for rendering a ruling favorable to Mr. Waltman. At bottom, the critical point is that *we* are not situated to relieve Mr. Waltman of the possibly grim consequences of his strategic choices. All we are at liberty to do, based on the applicable facts and governing law, is dismiss Mr. Waltman's appeal. *Cf. Lloyd Noland Found., Inc.*, 483 F.3d at 782 ("Lamentably, the jurisdictional defect in this appeal was not identified until after briefing and oral argument on the merits. Nevertheless, lack of jurisdiction gives us no authority to go forward.").

[14]     In *Bruner*, after concluding that Rule 54(b)'s finality requirement could not be satisfied "because the district court ha[d] only partially disposed of a class of claims that . . . [were] so factually related that they should instead be disposed of together," 259 F.3d at 1243, we similarly "conclude[d] by briefly examining whether the district court's certification order adequately articulated the determination[] of . . . no just reason for delay that [is] required by Rule 54(b)," *id.* at 1244.

requirement." *Schrock*, 727 F.3d at 1279. In other words, we have concluded repeatedly that we lack appellate jurisdiction when a district court's order "fails to comport with Rule 54(b)'s requirement that a final judgment be entered only upon an express determination that there is no just reason for delay." *Stockman's Water Co.*, 425 F.3d at 1266; *accord Schrock*, 727 F.3d at 1279; *see also EJS Properties, LLC v. City of Toledo*, 689 F.3d 535, 538 (6th Cir. 2012) ("Because the district court failed to make an express determination that there was no just reason for delay, we lack jurisdiction to hear this appeal."); *cf. Bruner*, 259 F.3d at 1244 ("While [Rule 54(b)'s] requirement that these determinations [i.e., the finality and no-just-reason-for-delay determinations] be stated explicitly in the district court's certification order is to some extent a formality, the requirement does provide district courts with one last opportunity to discover errors in their decision to certify an order for appeal."). Indeed, in *Schrock*, we rebuffed the parties' entreaties "to follow an approach taken by other circuits and look beyond the text of the district court's order to determine whether it can be said to have made the requisite determinations," 727 F.3d at 1278, concluding that such an approach would not be consistent with our precedent.

We have carefully scrutinized the district court's certification order that forms the foundation for this appeal and are constrained to conclude that the district court failed to satisfy the express-determination requirement of Rule 54(b). Specifically, at no point during its substantive analysis did the district court ever make an express determination that "there [was] no just reason for delay." Fed. R. Civ. P. 54(b). The only time that the

38

district court uttered "th[is] magic phrase required by Rule 54(b)," *Bruner*, 259 F.3d at 1244, was when the court was formulaically articulating the general requirements for a Rule 54(b) certification. The court thus explicitly acknowledged the express-determination requirement, yet did not comply with it. The court's focus appeared to be almost exclusively on the finality component of the Rule 54(b) certification. Irrespective of the reasons for this failure,[15] the omission is dispositive: "the district court's certification order fails to provide us with appellate jurisdiction." *Stockman's Water Co.*, 425 F.3d at 1266.[16]

---

[15] There is some language in the district court's order that intimates that the court perceived the unique circumstances of this case as permitting it to intentionally excuse compliance with the express-determination requirement. In this regard, the court noted that its "holding [was] specific to the facts of this case" and that "[i]n most instances, the Court will continue to evaluate Rule 54(b) certifications in light of the dual determination," which includes "that there is no just reason to delay review." Aplt. App. at 668. However, it is perhaps more likely that this language relates only to the court's Rule 54(b) finality ruling—apparently the court's virtually exclusive concern. Viewed as such, it would amount to the district court's explanation for why, under the circumstances of this case, the district court found Rule 54(b) finality despite the dismissal *without* prejudice of the purported exacerbation claim. The district court's admonishment that immediately followed this language makes sense under this view: "[T]he Court cautions plaintiffs contemplating the voluntar[y] dismissal of claims without prejudice for the purpose of expediting appeal. In most cases, these dismissals will be viewed as lacking finality." *Id*. at 669. However, irrespective of whether the district court's failure to satisfy the express-determination requirement was intentional or inadvertent, the fact is that the court failed to comply with the requirement, and the conclusion that ineluctably follows is that its Rule 54(b) certification is fatally defective.

[16] In *Bruner*, we arguably revealed in dictum some disquiet with an interpretation of our precedent that would oblige us to inflexibly insist that district courts actually articulate in precise terms "the magic phrase required by Rule 54(b)." 259 F.3d at 1244. In this regard, we noted that this requirement was "to some extent a formality," and found "more important[]" than the district court's failure to utter this "magic phrase"

(continued...)

[16](...continued)
the fact that its remarks were "problematic because they [were] conclusory and not supported by any reasoning." *Id.* And, possibly intimating that the failure to precisely utter the "magic phrase" might not be dispositive in every instance in depriving us of appellate jurisdiction, we concluded that it was "unnecessary to decide whether the district court properly determined that there was no just reason for delay," *id.*, even though it did not precisely utter the magic phrase. *Bruner*'s arguable disquiet would not be particularly remarkable given our tendency to eschew hypertechnicality in assessing our appellate jurisdiction. *See, e.g.*, *Sines v. Wilner*, 609 F.3d 1070, 1074 (10th Cir. 2010) (stating that "we should not be hypertechnical" in reviewing a notice of appeal). Indeed, while clearly avowing its adherence to Rule 54(b)'s express-determination requirement, the Third Circuit has suggested that the rule does not necessarily mandate precise utterance of the magic phrase (i.e., "there is no just reason for delay"). *See Elliott v. Archdiocese of N.Y.*, 682 F.3d 213, 227–28 (3d Cir. 2012). Specifically, the Third Circuit in *Elliott* stated, "Although we conclude that Rule 54(b) requires an 'express' determination, we do not believe that the rule requires that a district court employ the talismanic phrase 'there is no just reason for delay' prior to entry of a final judgment." *Id.* at 227. Even under this arguably more flexible standard, however, the court concluded that appellate jurisdiction was lacking: "The District Court here failed to state in its order that it had determined that there was 'no just reason for delay' and it failed to use any other language of *indisputably similar effect*." *Id*. at 229 (emphasis added).

The Third Circuit's approach is perhaps narrower than the alternative one that we felt obliged to reject in *Schrock*. *See* 727 F.3d at 1278 ("[The parties] urge us to follow an approach taken by other circuits and look beyond the text of the district court's order to determine whether it can be said to have made the requisite determinations."). Yet, even if the Third Circuit's approach could be deemed congruent with our precedent—an issue upon which we explicitly decline to opine—it would not avail Mr. Waltman. The only statements in the district court's certification order that even conceivably could be deemed to speak to the express-determination requirement are the following: (1) "[i]n light of the parties' new arguments, the Court concludes Rule 54(b) certification is appropriate in this case," Aplt. App. at 661; (2) "*[i]n most instances*, the Court will continue to evaluate Rule 54(b) certifications in light of the dual determination . . . that the order it is certifying is final, and . . . that there is no just reason to delay review," *id.* at 668 (emphasis added); and (3) "this case is ripe for appellate consideration," *id.* at 669. Not only is it patent that this language does not involve the precise use of the "magic phrase," but it also cannot be seriously argued that this language (pursuant to the Third Circuit's approach) makes the express determination by using language of indisputably

(continued...)

40

In sum, even if the district court had correctly invoked the rubric of Rule 54(b) because Mr. Waltman's action actually involved multiple claims, we would nonetheless determine that we do not have jurisdiction over this appeal because the district court did not—as Rule 54(b) requires—expressly determine that there was no just reason for delay.

**IV**

For the foregoing reasons, this appeal is **DISMISSED** for lack of jurisdiction.

ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge

---

[16](...continued)
similar effect. Therefore, even under a more flexible approach than that historically employed in our cases, the district court's certification order would be fatally flawed on express-determination grounds and thus would not provide a proper foundation for our appellate jurisdiction.